# CHARLESTON.

GLENDANDE WALKE *v.* PREMIER POCAHONTAS COLLIERIES CO.

Submitted May 1, 1923.     Decided May 15, 1923.

1. ANIMALS—*Owner Held Negligent in Driving Untried Horse Without Reins.*

   It is negligence as a matter of law for a coal company, regardless of its custom or the custom of others, to hitch an untried horse, unaccustomed to such use, to steel rails, and without reins or lines attempt to drive him up a hill in the neighborhood of miners' houses built by such company in furtherance of its business, and by reason of such want of restraint the horse becomes scared and runs away through one of the streets or ways between such houses and does inury to an infant playing in the streets while residing with its parent, an employee of the company, in one of such houses. (p. 43).

2. EVIDENCE—*Courts Will Take Judicial Notice That Horses Otherwise Gentle Are Liable to Run Away When Used for Unaccustomed Purposes and Freed From Restraint.*

   Courts will take judicial notice that horses, although otherwise tractable and gentle, are liable to run away when thus used and freed from restraint. This is common and ordinary experience against which reasonable and prudent men will take precaution. (p. 44).

3. NEGLIGENCE—*Child of Employee, Residing on Employer's Premises, not Mere Licensee.*

   An infant child residing with its father, an employee of a coal company, in one of the houses built by the company on its premises for its benefit, is not a trespasser or a mere licensee, and towards such person a greater degree of care for his protection is required of such coal company than would be owed to an intruder or a mere licensee. (p. 45).

94 W. Va.

4. APPEAL AND ERROR—*Grant of New Trial for Excessive Damages not Disturbed, Unless Clearly Wrong; Judgment Setting Aside Verdict for Personal Injuries on Refusal of Plaintiff to Accept Lesser Amount Reversed, Where Partiality or Prejudice not Shown.*

Where in an action for personal injuries the verdict is large considering the character and permanency of the injuries, and the trial court has set aside the verdict on this as one of the grounds assigned, great respect should of course be accorded to the judgment and opinion of the trial court, and it will not be disturbed except when clearly wrong. But where the injuries sustained by plaintiff are exhibited in the appellate court and appear to be of such magnitude and of such permanency as to negative any theory of bias, partiality or prejudice on the part of the jury, and the trial court put the plaintiff on terms of accepting a lesser sum than that found by the jury, which the plaintiff, refused, and the court thereupon set aside the verdict, the judgment of the lower court will be reversed, the verdict reinstated and judgment entered thereon. (p. 45).

Error to Circuit Court, McDowell County.

Action by Glendande Walke, by next friend, against the Premier Pocahontas Collieries Company. From an order setting aside the verdict for plaintiff, and awarding a new trial, plaintiff brings error.

*Reversed, verdict reinstated; judgment for plaintiff.*

*Crockett & Sanders, A. G. Froe,* and *Sanders, Crockett & Fox,* for plaintiff in error.

*Strother, Sale, Curd & Tucker,* for defendant in error.

MILLER, PRESIDENT:

This is an action on the case brought by plaintiff, an infant, suing by his next friend, for personal injuries. After introducing his evidence, the defendant introducing none, the court on motion of plaintiff directed the jury to find a verdict for him. They retired to determine the amount of damages sustained, and returned a verdict for plaintiff of $3,300.00. On motion of defendant to set aside this verdict, and in arrest of judgment, the court put the plaintiff on terms of accepting in lieu of the sum found the sum of $1,500.00, or the verdict

would be set aside. Plaintiff declined the offer, and the court set aside the verdict and awarded defendant a new trial; and it is this judgment that we are called upon to review, upon a writ of error sued out upon the petition of plaintiff.

The alleged negligence consisted in the ownership by it, unattended by any one, of a wild, uncontrollable, vicious, unbroken and dangerous horse at its coal operations in McDowell County, in close proximity to the houses built by it for use of miners, one of which was occupied by plaintiff's parents; and in an amended count filed it is alleged that defendant's stable boss, in the regular course of his employment, wrongfully, negligently and unlawfully turned over to another employee of said defendant a certain horse, which was wrongfully, negligently and improperly harnessed and equipped for the work said servant was directed to do, in that there were no reins or lines on said harness or horse, by reason of which said horse became unmanageable and ran away doing the injury to plaintiff complained of; and it is further averred that, on the 13th day of October, 1921, when the plaintiff sustained his injuries, he was in the street opposite and in close proximity to the house and yard occupied by his parents and was struck and dragged quite a distance by said horse running away and hitched to steel rails, whereby he was cut, lacerated, injured and wounded upon his head, and whereby he became sick and sore and suffered great pain, and was put to great expense in endeavoring to be cured, and for all which he demands damages in the sum of $25,000.00. The evidence supported the facts as alleged, except that there was no evidence that the horse was vicious.

As the defendant introduced no evidence, the facts proven were uncontroverted. The first proposition by counsel for plaintiff is that the court erred in setting aside the verdict and awarding defendant a new trial. On the other hand defendant would support the judgment below, in the first instance, on the ground that the court improperly instructed the jury at the instance of plaintiff to find a verdict for him; and in the second place, that its action was fully justified by the excessiveness of the verdict.

Defendant's counsel proposed some ten several instructions, refused, but which if given would have denied plaintiff any right of recovery; (1) on the theory that his evidence, the plaintiff having the burden, was insufficient to support a verdict for him, and that the verdict should have been for defendant; (2) that the evidence shows that the injury was the result of an unfortunate accident imposing no liability on defendant; (3) that the plaintiff was a mere licensee. and that the only duty owed him by defendant was to keep its premises in a safe condition, and the fact that plaintiff was an infant did not alter the duty owed him; (4) that plaintiff being a mere licensee, defendant was not bound to prepare or equip its horses so employed in any particular way, and that there was no liability on defendant with respect thereto except not to wantonly and wilfully injure plaintiff; (5) that the accident to plaintiff was unavoidable and one against which defendant could not by any foresight reasonably have been required to provide, wherefore the verdict should have been for defendant.

Of course, if these propositions be well founded in law and fact, the court below, as defendant's counsel contend, instead of instructing the jury to find for the plaintiff, should as requested by them have directed them to find for defendant, and that the judgment should stand although the reason assigned by the court for its action may not be regarded a sufficient one.

The controlling question presented then is, does the pleadings and evidence as matter of law make out a case of actionable negligence against the defendant? The evidence of Sargeant, the employee in charge of defendant's horse, and of Carter, the stable boss from whom the horse was obtained to snake up the rails, introduced by plaintiff, on cross-examination by defendant's counsel, tends to show that it was the custom of defendant, and perhaps elsewhere in the coal fields, to use horses for that purpose without rein or line to control them, and such being the custom, counsel say defendant could not rightfully be charged with negligence as a matter of law, and that being one of mixed law and fact, the question should have been submitted to the jury. The authorities

relied on are: *Dimmy* v. *Wheeling & Elm Grove Railroad Co.*, 27 W. Va. 32; *Starks* v. *Balto. & Ohio Railroad Co.*, 77 W. Va. 93, 100; 3 Labatt's Master & Servant, §940. The first of these cases involved the question of contributory negligence by plaintiff, and it was decided that she could not be required to observe a greater degree of care than was usual under similar circumstances among careful persons of the same class. We do not appreciate the application of this case to the case at hand. The Starks case involved the duty of a railway company toward stock trespassing on its right of way and to maintain fences and other equipment, which has little, if any, bearing on the point for which it is cited. The particular thing relied on in Labatt is a doctrine which the author says has been extensively applied, and thus stated: "Where the only inference that can reasonably be drawn from the evidence is that the master conformed to the general usage of the average member of his trade or profession in respect to the adoption or retention of the instrumentality in question, he may be declared as a matter of law, to have been in the exercise of due care." But this authority says, in the same connection, that the language of this doctrine taken literally would often convey the idea that the generality of the usage and the similarity of the business or establishment of which the usage is adduced as a standard of comparison are the only points to be considered, and that the manner in which the business or establishment is conducted and the character of the persons engaged in it are not material factors on the questions to be determined. But he says these latter elements are material and that the test really propounded is not usage of any employers, however imprudent and unskillful, or any concern, however ill regulated, but the usage prevailing among prudent and skillful employers in well regulated concerns. This doctrine, as the text and the cases cited will show, is the one generally applicable to the kind and character of the machines and mechanical devices employed, and is the general doctrine announced in many of our decisions, namely, that the employer is not bound to use the newest and best appliances, but such as in his particular trade or business are regarded as reasonably safe, is

all that is required. Whether this doctrine may be properly applied to the manner of employing and equipping horses, however safe and tried out by use, may well be doubted. Certainly it would be the grossest negligence to employ a wild, vicious and untractable horse in the way described. In this case there is no evidence that the horse was wild, vicious or uncontrollable; but the evidence does show, we think, that the horse was unused to this kind of work and had only been owned by or in the possession of the defendant for three or four months. There is no evidence of a custom to use wild or uncontrollable, or new and untried horses, equipped as this one was in the vicinity of miner's houses where children and adults employed about the master's business were allowed and necessarily required to be in the performance of their duties. In section 947 of Labatt, referring to the language of Willes, J., in an English case, namely that, ''no usage could establish that what is in fact unnecessarily dangerous was in law reasonably safe as against persons towards whom there was a duty to be reasonably careful,'' the writer interposes this language as saying in effect: ''Custom furnishes no excuse, if the custom itself is negligent.'' ''In this point of view,'' he says, ''the master's conformity to the general usage is regarded merely as evidence tending more or less strongly to exculpate him from the charge of negligence.''. The instrumentality or agency involved here is a horse, not a machine but a sentient animal, unequipped with reins or lines for his control, unused and untried in the particular kind of work to which he was put on the particular occasion in question.

Can we say, should we say, as a matter of law that such use under the particular facts and circumstances consituted negligence per se? We are disposed to hold that it was, and that the peremptory instruction complained of was rightfully given.

As was said in *Reilly* v. *Nicoll,* 72 W. Va. 189: ''It is unusual to hold a master guilty of negligence, upon facts adduced in evidence, as matter of law, but to do so is not inconsistent with law. On the contrary, it accords perfectly with

the principles upon which the courts deny recovery on the ground of contributory negligence, when the state of the evidence is such as to permit only one reasonable conclusion or opinion.''

On the principle proposition, however, this court has heretofore held that, ''in cases where the common experience of mankind, and the common consensus of prudent persons, have recognized that to do or omit to do certain acts as prolific of danger, we may call the doing or omission of them 'negligence *per se*,' or 'legal negligence'.'' *Carrico* v. *Railroad Company*, 35 W. Va. 389. ''That horses, although otherwise tractable and gentle, are liable to and do run away when thus freed from restraint, is a common and ordinary experience, against which any reasonable and prudent man takes precaution.'' *City of Joliet* v. *Shutelt*, (Ill.), 32 N. E. 969, 18 L. R. A. 750. In *Moulton* v. *Lewiston, Bruswick & Bath Street Railway*, (Me.), 10 L. R. A. (N. S.) 845, it was decided that one who leaves a horse unhitched in a street on which cars using snow scrapers calculated to frighten horses are running, can not hold the street car company liable for injury to the horse and vehicle due to the horse becoming frightened at a car and dashing in front of it.

To this case an elaborate note will be found collating the cases of this character; and under the heading ''Evidence of Negligence'', will be found many cases supporting the proposition, that it is contributory negligence as a matter of law for the owner or driver of horses to leave them unhitched or unattended, barring recovery for the injury when injured under circumstances similar to those involved in the principal case. It is unnecessary to review these cases here. The proposition which they all support is that the contributory negligence which in such cases would bar the owner of the horse so operated from damages to the horse, would render him liable as a matter of law to one injured thereby and to whom he owed some specific duty. We find no fault with the argument and authorities cited in support of the proposition that ordinarily the question of negligence is a mixed question of law and fact for the jury, but not so in

cases where the facts are undisputed and present to the court a question of law alone.

It is true, as argued by counsel, that one is not liable for negligence when no injurious consequences could reasonably have been anticipated as a result of the act of omission complained of. *Virginia Iron, Coal & Coke Company* v. *Hughes,* 118 Va. 731, 88 S. E. 88, 92, *McClary* v. *Knight,* 73 W. Va. 385, 392; *Leonard* v. *Enterprise Realty Company,* 10 A. L. R. 238. But whether such consequences should have been anticipated is the question we have decided against defendant in this case. We hold that as a matter of law the injurious consequences which befell the plaintiff reasonably should have been anticipated from the operation of the horse as he was being driven, in such close proximity to the houses and homes of its employees and where they and their household had the right to be.

But it is said that the plaintiff had only permissive use of the premises, and if not a trespasser was a mere licensee, to whom the defendant owed no duty except not to wantonly and wilfully injure him. For this proposition counsel refer us to *Smith* v. *Sunday Creek Company,* 74 W. Va. 606. While the language quoted by counsel is found in the opinion of that case, the decision is inapt. There the person injured was a little girl, occupying with her father, an employee of the defendant, a house on the defendant's property and in close proximity to the railroad on which the car stood that unattended broke away and did the injury of which she complained. The entire language which shows its applicability to this case is: "Mere permissive use of the premises, by express or implied authority, ordinarily creates only a license. Yet if the use is in connection with the business of the owner, or for his benefit, it is more than a mere license, and a greater degree of care is recognized on his part than in cases of mere licensees using the premises for purposes of their own." For this law numerous cases and text books are cited. And it is there said that this law extends to one who resides as a boarder at the home of an employee living in a house built by the employer. The cases of *Dicken* v. *Liverpool Salt & Coal*

*Company,* 41 W. Va. 511; *Ritz* v. *City of Wheeling,* 45 W. Va. 262; *Uthermohlen* v. *Bogg's Run Company,* 50 W. Va. 457; and *Martino* v. *Rotondi,* 91 W. Va. 482, 113 S. E. 760, all involved the rights and liabilities of trespassers, and for this reason,- if for no other, are not controlling. Nor do we think the case of *Martin* v. *Coal Company,* 70 W. Va. 711, applicable. In that case the injury· occurred to a child, on· the company's side track, where an employee operating a car did not see it; and a majority of the ·court thought the defendant had no reason to believe·it might be found there. Speaking my own opinion, I do not think that decision was right. Judge WILLIAMS and I dissented, and I filed a dissenting opinion setting forth my views, which I still entertain. The case which seems to me to be especially applicable here as defining the .relationship and duties of the defendant towards the infant plaintiff is the later case of *Smith* v. *Sunday Creek Company, supra.*

The most troublesome question presented, and the one on which the trial court erred, if it erred at all, is that of the alleged excessiveness of the verdict. The nature and extent of the injuries of the child, an infant of about three years, is that he was struck on the forehead, and a laceration effected something in the shape of a horseshoe clear through to the bone or skull, which if stretched out would be about three inches in length, from which the skin, the father says, hung down leaving the bone exposed, and that it remained so from October 13th to December 1st; that it was about ten months until the wound healed over; that two or three times afterwards it became sore and discharged pus; and that before that the child was in good health.

The· physician in charge of the case stated that the child was in the hospital about eight days before he was discharged; that besides the wound on his forehead there were two slight bruises on the back of his head; that he gave the child·ether in order to treat the wounds; that as the child grows and increases.in age the disfiguration will diminish, but that the scar will remain to a certain extent as long as he lives; that at the place where the scar is the skin is thin and easily scratched, and more susceptible to infection; and that the·in-

jury was merely a scalp wound, and that there was no injury to the skull, and none affecting the child's health.

On the original hearing here, based on the professional opinion of the physician that the character of the injuries inflicted on the child were impermanent and slight in character, and the action of the court in setting aside the verdict, we concluded that the verdict was excessive and that the judgment below should not be disturbed. But on the present hearing, the child with the character and permanency of the injuries inflicted having been personally shown to the court and we thereby put in possession substantially of the same facts as were presented to and considered by the jury when rendering their verdict, we have become satisfied that the verdict was not excessive, and that plaintiff ought not to have been put on terms of accepting a less sum than the amount found by the jury. As many times ruled by this court the quantum of damages in such cases is generally for the jury, and ordinarily their verdict will not be disturbed unless so large or small as to evince bias, passion, prejudice, or mistake, or lack of due consideration of the evidence. *Thomas* v. *Lupis,* 87 W. Va. 772.

Our conclusion, therefore, is to reverse the judgment, reinstate the verdict, and enter judgment thereon for the plaintiff, which we think the circuit court should have pronounced.

*Reversed; verdict reinstated, judgment for plaintiff.*