# CHARLESTON.

D. B. DAUGHERTY AND E. E. YOUNG *v.* A. F. PARSONS *et al.*

Submitted December 4, 1923.   Decided December 11, 1923.

CONTRACTS—*Agreement to Hinder Civil Actions by Use of Criminal Process Invalid.*

Contracts to stifle or suppress evidence, or to hinder the prosecution of civil actions by the use of criminal process are illegal and unenforceable.

Error to Circuit Court, Cabell County.

Action by D. B. Daugherty and another against A. F.

Parsons and others. There was an order setting aside a judgment for plaintiffs, and they bring error.

*Affirmed.*

*J. W. Perry* and *Lace Marcum,* for plaintiffs in error.
*Deegan & Hall,* for defendants in error.

MEREDITH, JUDGE:

Plaintiffs instituted this action upon notice of motion in the circuit court of Cabell County to recover $3000 for securing the dismissal of certain civil actions pending therein, in which C. T. Benton was the plaintiff and the defendants and a corporation in which defendants were interested were parties defendant. The court set aside a verdict for the plaintiffs on the ground that the same was contrary to the law and the evidence, and granted defendants a new trial. Plaintiffs seek a reversal of that judgment.

That an agreement was entered into between plaintiffs and defendants whereby the latter agreed to pay plaintiffs a fee of $3000 for procuring a dismissal of the suits is not seriously denied in this court, although it was below. Neither can it be contended that plaintiffs did not perform their part of the contract. The sole question, as presented here, is whether the contract upon which this action is brought is an agreement legally binding upon the defendants.

We are again confronted with the situation of a jury's verdict arrived at under appropriate instructions from the court, on the one hand, and the judgment of that court setting aside the verdict, on the other. We discussed our practice in cases of this kind in the recent case of *St. Clair* v. *Jaco,* decided this term, and it need only be said that it depends largely upon the circumstances of each case as it arises whether the verdict or the judgment shall control. We first considered this case with the view of indulging all reasonable doubts in favor of the jury's finding; then, following the rule which requires us to accord special weight to the order of the trial court setting aside the verdict, we viewed the evidence from what must have been the trial court's viewpoint. The account of the evidence which follows is the result of these analyses.

The record shows that the civil suits which the defendants, J. K. Parsons and A. F. Parsons, sought to have dismissed, involved alleged claims against them and a corporation, in which they were interested, aggregating $425,000 or more, and that defendants, partly through their agent, Fisher, and partly in person, agreed to pay plaintiffs a fee of $3000 to get rid of these suits. This of course was an eminently proper arrangement. There had been some negotiation through Fisher as to the price to be paid, but it is clear from plaintiff's statement of the case that $3000 was the amount agreed upon. As witnesses in their own behalf, the defendants attempt to deny that such an agreement was ever entered into; all that need be said upon that point, however, is that the evidence as a whole, including several of defendants' own statements, proves beyond reasonable doubt that such an agreement was made, and was carried out, and that defendants well understood what the price was to be.

The chief controversy both as to law and fact concerns the agreement of the parties as to the method to be employed in effecting a dismissal of the Benton suits. It is this part of the agreement which has created the difficulty both in the circuit court and here. We think the facts of this important phase of the case are substantially as follows: In the first place, it appears that plaintiff Daugherty, through professional relations and otherwise, had gained some, if not considerable, knowledge of Benton's affairs. True, he says he had not represented Benton, but he had represented Benton's wife in some controversy concerning an automobile, and in his testimony he admits knowing sufficient facts concerning Benton to practically assure a conviction on the criminal charge of forgery. Equipped with this knowledge and information, he consented to the proposal of Fisher, defendants' agent, to secure the dismissal of the civil suits, and attended two conferences with defendants for the purpose of working out a plan to accomplish the desired dismissals. At the first of these conferences other attorneys were present, and they refused to be parties to the plan Daugherty proposed. At the second conference, there were no other lawyers, and Daugherty outlined his plan of action more fully. He sug-

gested that in order to procure a dismissal of the suits they have warrants issued against Benton in the county of Mercer, charging him with forgery, and that they prosecute him on those charges. As to this much of the plan there is little serious controversy in the record. The differences arise over the objects of this prosecution as explained by the various parties. It should be obvious enough that in prosecuting any person on criminal charges, the only proper immediate object should be to satisfy the requirements of public justice by a conviction of the defendant, if guilty, or by an acquittal, if innocent. It must certainly not be for the purpose of scaring or driving the defendant out of the court's jurisdiction, thus robbing instead of satisfying justice. Whether or not those interested in the prosecution may properly have other indirect objects in mind, it is not necessary to consider at this point. As we develop the theory of the defense, the importance of these principles will be observed.

Plaintiffs introducd three witnesses who testified regarding the dismissal of the suits and the Benton prosecution. The first of these was Daugherty. At one point he states: ''There was no object in my mind and it was not discussed about running him out of the country, or running him away at that time; my purpose was to have the warrant issued and convict him because of the fact that he was guilty.'' Again, he says: ''I can convict that man, I know it. I can rid you of this trouble and stop this robbery and thieving and perpetrating these crimes that has been going on, with Benton the cause of it.'' These statements plainly support the conclusion, strongly urged by plaintiffs, that their object in initiating this prosecution was to bring a guilty person to justice. We do not think, however, that upon this record these statements can be considered alone. Other portions of Daugherty's testimony and statements of Fisher and plaintiff Young are also to be considered and they are not altogether consistent with Daugherty's testimony quoted above. It was brought out early in the examination of Daugherty that it had not been entirely out of the minds of the parties that the criminal prosecution might result in Benton's leaving the state, in which event a dismissal of the civil suits would

probably follow. Daugherty, however, maintained that while this was suggested by A. F. Parsons, such was not his, Daugherty's object. He stoutly insisted, as above shown, that he was confident that the result of the proceedings would be a conviction. As a closing statement, however, when he was being examined on another matter, that is, whether he had intimated to defendants that a settlement with Benton might be effected, he said: "No, sir, I didn't say that, nor did I intimate any such statement that they would have to pay Benton any sum of money. I said this, that the result would be the same, if he were arrested, convicted and sentenced to the penitentiary, or if he should escape or leave town, the result would be the same, the suits would be gotten rid of or dismissed." As a matter of fact, after a hurried call upon Daugherty to inquire about the charges against him, Benton did leave the state, and had we been called upon to determine the facts in the first instance, it may be that we would have inclined to the view that Daugherty was telling the exact truth when he testified to the above. To bear this out, note the testimony of plaintiff Young as to what occurred at the conference with defendants. "Some one said that he would probably flee the country if he knew about it. Some one suggested that.—I can't say just now who it was that said that because I was not paying particular attention to the details, that would effect the same result, the primary object being to get these suits dismissed and get rid of this litigation." Again, in the examination of Fisher we find the following:

"Q. Wasn't the proposition for Mr. Daugherty to get rid of Mr. Benton so he could not testify in these suits?

A. The proposition was to convict him in Mercer County, to convict him criminally and after that let these suits go by default or withdraw them.

Q. And get rid of these suits?

A. I said that.

Q. And running him out of the country was just as good as any other way.

A. What they wanted was Benton out of the way, so there would be nothing more to the suits."

Daugherty was recalled for further cross-examination, at which time he became more emphatic that he never dreamed of helping to run Benton away, had nothing to do with it, and that all suggestions of that kind came from defendants.

The testimony of the defendants themselves could hardly be said to be convincing on any point. A large part of it consists of denials that plaintiffs were employed for any purpose, but this contention is so plainly contradicted by the record, including many of their own statements, as not to merit discussion. They do say, however, that Daugherty suggested a criminal prosecution in order to get Benton to "leave possibly," and since this statement is somewhat corroborative of much of the evidence of the plaintiffs as well as statements of other defense witnesses, it is not altogether unimportant. O. J. Deegans is the only witness for the defense who testifies forcibly on the point. He says that in conference, Daugherty informed him that he, Daugherty, knew Benton was a crook of the deepest dye, ought to be got rid of, and that "all in the world that would have to be done, would be to procure a warrant and let him have knowledge of the fact and let him talk to him, then he thought he would go."

Daugherty proceeded under his agreement with defendants by furnishing advice to A. F. Parsons relative to the issuance of the warrant. Parsons and Fisher went to Mercer County two days after the agreement was entered into, swore out the warrant, and, as stated above, Benton left the state. The criminal proceedings apparently went no further, and at a subsequent term of the Cabell County Circuit Court the civil suits instituted by Benton were dismissed for want of prosecution. Undoubtedly, plaintiffs performed their part of the agreement so far as effecting the dismissals is concerned. Defendants not being in position to successfully controvert the agreement, now defend upon the ground that it is illegal and not binding upon them in a court of law.

As stated at the outset, we are not called upon to decide the issues of fact and law involved in this case as a matter of original determination. That is the province of the trial court and the jury. They have arrived at opposite conclusions and it is our task to ascertain which was the proper result.

The jury was charged by the court in part as follows:

> "Now in this case if you find from the evidence in
> this case that the employment of D B. Daugherty was
> for the purpose of instituting criminal proceedings
> against one, C. T. Benton, with the intent and object
> of thereby preventing Benton from appearing in this
> court and proceeding with his civil suits against Par-
> sons and that Mr. Daugherty in pursuance of that em-
> ployment carried out either in whole or in part the in-
> tention to do that, then that contract of employment
> was illegal and void as against public policy and the
> plaintiffs in this case can not recover thereon. In such
> case your verdict would be for the defendants; but of
> all these facts, gentlemen, you are the sole judges."

Other propositions contained in the charge need not be
mentioned; they cover phases of the case not now in contro-
versy and seem to state the law correctly. We stated early in
this opinion that the verdict was arrived at under appropriate
instructions; and we hold to that view. The language quoted
above tells the jury in substance that if the employment of
plaintiffs to prosecute Benton was for the purpose of prevent-
ing the latter's appearance in his civil actions it was illegal
and unenforceable. We concur in that view. Contracts for
the suppression of evidence, or involving anything inconsist-
ent with the impartial course of the administration of justice
are uniformly held to be illegal. 15 Am. & Eng. Ency. Law
(2d. ed.) p. 977; 6 R. C. L. Contracts, §§157, 164; 13 C. J.
Contracts, §382. Many other authorities could be cited, but
we think the proposition settled beyond the point of reasonable
debate.

Under the above instruction the jury found that the agree-
ment was not illegal, in other words, that the contract of
employment was not for the purpose of preventing Benton
from appearing in the civil actions. The court said this find-
ing was contrary to the law and the evidence. The law was
accurately stated in the charge, so the judgment must have
been that the verdict was contrary to the evidence. In this
we have come to the conclusion that the judgment was amply
supported by the record. As heretofore shown, Daugherty
was emphatic in some parts of his testimony to the effect that

he did not suggest the criminal prosecution for the object of driving or frightening Benton out of the state. But was driving Benton away the only way in which the criminal prosecution could have restrained Benton's participation in the civil suits? Without a further review of the facts, we think an examination of the testimony reveals with reasonable clearness that plaintiffs undertook to use the criminal court of Mercer County as an instrument to suppress Benton's activity in the civil suits. Whether this was to be accomplished by frightening Benton out of the state or by conviction and incarceration we deem immaterial. Daugherty's own statement that he was working "for the sole end of settling the litigation" and his other testimony, taken in connection with his subsequent actions, would be sufficient grounds upon which to base the trial court's judgment.

We must conclude that this is a proper case to apply the principle that the trial court's judgment setting aside a verdict will not be set aside unless clearly wrong. *Walke* v. *Collieries Co.*, 94 W. Va. 38, 117 S. E. 904. The judgment is not clearly wrong, it is strongly supported by the evidence, and will be affirmed.

*Affirmed.*