# CHARLESTON.

ORLANDO DIOTIOLLAVI v. UNITED POCAHONTAS COAL Co.

Submitted March 4, 1924.   Decided March 11, 1924.

1. NEGLIGENCE—*Invitation by Coal Mining Company to Miners to Use Railway Track as Passway Held Implied.*

Where a coal mining company hauls coal over a railway from its mine to its tipple, and constructs dwelling houses for its miners facing the track in close proximity thereto with a walk and gate from the front yard opening out onto the track, there being a space of five or seven feet from the gate to the track, and the track has been used by its miners and their families for six years as a means of ingress and egress to the house to and from public places in the near vicinity, with the tacit acquiescence of the coal company, an invitation to the occupants of the houses to enter upon and use the track for ingress and egress will be implied; and the coal company owes a higher degree of care towards such persons while so using the track than if they were trespassers or licensees.   (p. 697).

2.  SAME—*Care Required of Coal Mining Company as to Miners'
    Children*

In such case the coal company must use ordinary and rea-
sonable care to prevent injury to its miners' children entering
upon the track from such houses occupied by them, in order
to attend a public school.  (p. 697).

3.  SAME—*Question of Negligence of Coal Mining Company as
    to Children of Miners Held for Jury.*

. Where it is shown that such child while on its way to
school and upon the track is injured without contributory
negligence on its part, by a loaded coal mine car running
from the drift mouth by gravitation without any one in
charge thereof and a short distance behind a trip of cars
hauled by an electric motor, an inference or presumption of
negligence is imputable to the coal company; and if the coal
company attempts to rebut that presumption without showing
that it used ordinary and reasonable care, the question of
negligence is generally one for the jury, and it is error to
instruct for defendant.  (p. 698).

4.  TRIAL—*Test for Giving Instruction to Find for Defendant
    Stated.*

In considering the propriety of giving an instruction in
such case to find for defendant, the court should be guided
by what its action would be if a verdict had been for plaintiff
and a motion made for a new trial on the ground of pre-
ponderence of evidence for defendant.  (p. 701).

Error to Circuit Court, McDowell County.

Action by Orlando Diotiollavi, an infant, by his next friend,
against the United Pocahontas Coal Company.  From a judg-
ment for defendant, plaintiff brings error.

*Judgment reversed; new trial.*

*Crockett & Sanders,* and *Sanders, Crockett & Fox,* for
plaintiff in error.
*Strother, Sale, Curd & Tucker,* for defendant in error.

LIVELY, JUDGE:

From a judgment upon a directed verdict for defendant,
plaintiff Diotiollavi, an infant, by his next friend, prosecutes
this writ.

The action is for personal injuries sustained by plaintiff while rightfully on defendant's track leading from its drift mine to its tipple, caused by a single car running by gravitation down the track and not properly attended, and which ran over plaintiff without warning.

The accident occurred on November 1, 1921, on defendant's railway track built of wooden ties and steel rails, almost in front of the tenement occupied by the child's father. This track ran on a 1 1-4% down grade from the drift mouth to the tipple a distance of about eight hundred feet, the point of the accident being about six hundred and fifty feet from the drift mouth. A trip of loaded coal mine cars, about fourteen in number, were being hauled out of the mine to the tipple by an electric motor operated by a motorman, attended by one brakeman. A loaded three-ton coal mine car followed the trip at a distance of probably one hundred and twenty-five feet at the place of the accident. These cars were equipped with brakes on each wheel, and could have been stopped within a distance of about twenty feet when running twelve to fifteen miles per hour. Whether that particular car was a part of the trip and attached to it when it started, or whether it came out of the mine by gravity, is not clear. It appears that a workman in the mine, whose name is given as Page Marshall, was riding this detached car. Plaintiff, who was seven years old, accompanied by his sister a few years older, had come from his father's tenement out onto the track, and evidently had stepped off the track to let the trip pass, and upon stepping upon the track again was run over by the detached car, which cut off his left arm near the shoulder and his thumb and a portion of the index finger of the right hand. The two children were on their way to school after the noon recess, the schoolhouse being located down the track and some distance from it. The trip was moving at ten or twelve miles per hour. The motorman and brakeman, the latter having left the rear end of the trip and gone over the cars to the motor, knew nothing of the accident, and did not discover the detached car, or the car following, until they had neared the tipple, when the speed of the trip was checked and the car caught up with them, the brakeman going back and making

the coupling.  He says the car then was traveling at four or five miles an hour, and the impact was not great when it struck the rear of the trip.  Thence they proceeded to the tipple with the entire train of cars.  The brakeman says the trip was made up at the first parting, which was about six hundred feet inside the mine; that he did not couple the cars, that being the duty of the driver; that he rode the rear car until it reached the drift mouth when he walked over the cars to the motor in order to be at the front end when the trip reached the cut-off at the tipple, to perform some duty there. He says another employee of the company was on the rear car when it came out of the mine. This employee, Page Marshall, was not examined as a witness. Whether the detached car was ever coupled to the trip of cars or if coupled, when, where, or in what manner it became uncoupled, is a matter of conjecture.  It appears that there is a down grade from the first parting where the trip started until the tipple is reached. The motorman was not examined.  The only witness introduced by defendant was the brakeman from whose evidence the facts above regarding the detached car until it reached the place of the accident, are gathered.

The mine, track, tipple and miners' houses are all on the company's lease.  Six of the miners' houses, one being occupied by the child's father, were constructed near the track about six hundred and fifty feet from the drift mouth, and fronting the track, each enclosed by a fence with a gate opening out onto the track.  The distance between the gate and the track is five and a half feet to the end of the ties.  A photograph of the premises introduced in evidence shows a walk running from the gate of one of these houses across the space between the fence and the railroad.  This walk appears to be in front of the house next to where plaintiff lived.  There is evidence to show that the space between the yard fences and the track (parallel with and adjoining the track) was not used by pedestrians because of its rough condition and obstructions thereon preventing its convenient use.  That is, there was no passage way beside the track over this space between the fences and the track.  The photograph shows at least one miner's house on the opposite side of the track from these six

houses mentioned, but whether there is more than one does not clearly appear. One witness, Mabel Kiser, who saw the accident, was sitting across the track from plaintiff's house, but whether she was in her own tenement does not appear. At the rear of these six tenements ran a public road used by vehicles, motor cars and pedestrians, and onto which gates at the rear of the tenements opened. The schoolhouse and store were located down the track from these miners' houses, a distance not disclosed by the record. The railroad track was not a way of necessity. However, it appears that the track had been constantly used for about six years at the point of the accident and between that point and the school house and store by the miners and their families, and their children in attendance upon the school, without objection on the part of defendant. The miners used this track in going to and from their labor in the mine. Plaintiff's father was a miner in defendant's service.

The declaration charges that by reason of the construction and location of the miner's houses they were appurtenant to the track, intended so to be, and by reason of the continued use and occupancy of the track by the miners, their children and families in passing to and from the nearby tenements, schoolhouse and other public buildings, it became the duty of defendant to exercise due and reasonable care in the operation and management of its trains of cars upon the track to prevent injury to its employees and their children while using it; and that defendant, by its carelessness and negligence in the operation of its coal cars in the manner set out, caused the injury complained of.

Two controlling questions are presented: (1) Do the facts and circumstances impose upon defendant the duty to exercise reasonable care in the operation of its motors and coal cars over its track in order to prevent injury to the children of its employees while using the track? Are the children of defendant's employees licensees, trespassers, or in the relation of invitees while on the track? (2) If under the facts and circumstances plaintiff was an invitee and not a licensee or trespasser, has it been sufficiently shown that defendant's negligence caused the accident? Is the question of

negligence one for the court or for the jury? Evidently the trial court concluded that plaintiff was not a trespasser or licensee, for it refused to strike out plaintiff's evidence (when plaintiff rested his case) and direct a verdict for defendant; and directed a verdict for defendant only after defendant had introduced the brakeman in an effort to show that the company was free from negligence in the operation of its trip of cars.

It is reasonably well settled that the owner of private property, such as a coal mining or manufacturing plant, is not required to use ordinary care in the conduct and operation of his business so as to prevent injury to trespassers who come upon the property. Of course he cannot wantonly or wilfully injure such trespassers. Children of tender years are not exempt from this rule. Where a person who is injured upon private property is there by invitation or has been allured or induced to enter upon private premises, a much higher duty or care is imposed upon the owner in the operation of his business in the matter of keeping the premises reasonably safe and using ordinary precaution to prevent injury. Sherman & Redfield's Negligence, sec 485-D, secs. 704, 706. These principles of law are discussed and applied in our two cases of *Martin* v. *Coal Co.,* 70 W. Va. 711; and *Smith* v. *Sunday Creek Co.,* 74 W. Va. 606. Which principle will apply to the facts here developed? Plaintiff contends that this case is governed by the Smith case and by *Walke* v. *Premier Pocahontas Collieries Co.,* 94 W. Va., 38, 117 S. E. 905; while defendant contends that it is governed by the Martin case and by *Dickinson* v. *New River Coal Co.,* 76 W. Va. 148. The facts here are essentially different from those in either of the cases above cited. The miners' houses were constructed by defendant almost abutting on the railroad track, with gates opening in front of the enclosed lots in front of the houses, and leading almost immediately onto the railroad track. The space beside the track and between the fences and the track was unfit to be traveled by pedestrians. From one of these houses a concrete walk had been laid by the company from the gate to the railroad track. We think the construction of these houses almost abutting on the track with the front thereof toward

the track and the gates opening out onto it, was an invitation to the occupants of the tenements to use the track as appurtenant to the houses, as a means of ingress and egress. The track had been so used by the employees and their families for six years without objection or ·caution from the company. In the Martin case it was not shown how close to the track the tenements on either side had been erected, and we gather that one of the children of very tender years had wandered from the house down onto the railroad track. In the Dickinson case the tenement was one hundred and fifty feet distant from the track, and a child of eighteen months had wandered onto the track in a place of danger. It was recognized in the Dickinson case that if the declaration had alleged the use of the track as incident to the occupancy and use of the dwelling and measurably appurtenant thereto, the case would have fallen within the principle applied in the Smith case. But the declaration did not so allege. The facts were not developed; the case was dismissed on demurrer to the declaration. Here we have a declaration making that specific allegation, and facts proven which sustain it. It is true the track was not a way of necessity as there was a pubilc passway in the rear of the tenements which could have been used by the children of the occupants in going to the schoolhouse. If there had been no such public way the track would have been a way of necessity and the case much stronger; but by the proximity of the house to the track and the evident expectation that it would be used in reaching the front entrance, and its customary use in that way for many years, leads us to the conclusion that the child was not a trespasser or mere licensee, but on the contrary, was an invitee upon the railroad track; and the company owed to it ordinary care in the operation of its coal cars and motors to prevent injury. We think the case clearly falls within the principle of the Smith case.

Does the evidence show that defendant was not negligent so as to preclude that question from submission to the jury? This is a close question and not so easy of solution. It might be conceded that the running of the detached car from the drift mouth to the tipple by gravitation and unattended

would of itself be negligence, because the company could reasonably expect that its employees and their children, as well as others, would be using the track as they had used it for many years past. But the evidence tends to show that this car was not designedly detached from the trip, and was not making an independent journey. If it was ever coupled to the trip there is no explanation as to how or when it became uncoupled, or the cause thereof. In fact it is not reasonably shown that it was ever coupled, and the jury might well have concluded, in the absence of testimony from the driver whose duty it was to couple the cars, that it was standing at the rear of the trip and came down the grade by gravitation. It seems that this was possible and probable. The evidence of the brakeman cannot be said to establish the fact that it was coupled; he does not pretend to say so; he thinks it was. He did not leave it until after the trip emerged from the drift mouth. It could then have been, by force of gravity, against the car immediately in front. Explanation could have been made by Page Marshall, an employee of the company, who remained on this car after it left the drift mouth. Plaintiff having shown that the car was detached and running a hundred and twenty-five feet or more behind the trip, the injury occasioned thereby would warrant an inference of negligence to be weighed by the jury, but not necessarily to be accepted as sufficient. It called for explanation or rebuttal, but did not necessarily require it. It made a case to be decided by the jury; not that it compelled a verdict. Defendant attempted to meet and repel this inference of negligence by the evidence of the brakeman. The court concluded as a matter of law that the inference or presumption of negligence had been successfully rebutted. The burden of showing negligence remained with the plaintiff. The point here to be determined is whether defendant successfully rebutted the inference of negligence on its part. The mere fact that an accident has occurred does not ordinarily carry with it special weight, to prove that any one was negligent, the law simply holds it to be sufficient for the consideration of the jury, even in the absence of additional evidence. The plaintiff says the doctrine of *res ipsa loquitur* applies. Even should that doc-

trine be applicable, it would not relieve the plaintiff from carrying the burden of proof as to the negligence of defendant. The meaning of the doctrine contended for is well expressed by Justice Pitney in the case of *Sweeney* v. *Erving,* 228 U. S. 233, as follows:

> "In our opinion, *res ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. *Res ipsa loquitur,* where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is, whether the preponderance is with the plaintiff."

It does not appear where Page Marshall got on the car or where he left it. He was on it when the boy was injured. The evidence of the brakeman is indirect, while that of Marshall would likely have been conclusive of the manner in which the car became detached, if it ever was in fact coupled to the trip. Where the burden rests upon a party to prove a material fact at issue and he fails to produce an important and necessary witness to such fact, a presumption is raised that the testimony of that witness, if introduced, would be adverse to the party having it in his power to produce him; unless, of course, there is some valid excuse for his non-production. *Union Trust Co.* v. *McClellan,* 40 W. Va. 405; *Dewing* v. *Hutton,* 48 W. Va. 576. No such presumption can be attributed to a party who fails to call a witness, until there is a *prima facie* case made against him. *Cooper* v. *Upton,* 60 W. Va. 648, 654. Under the undisputed physical facts shown in this case, we do not think the evidence of the brakeman clearly and conclusively establishes that defendant was not negligent; at least his evidence is not sufficient to take the case from the jury, and to overcome the inference of negligence established by the physical facts. The demeanor of a witness on the stand and his manner of testifying, together with his

inclinations thus exhibited in the litigation, whether for one side or the other, are elements to be considered in giving weight to his testimony, and are peculiarly within the province of the jury. These elements cannot appear upon a printed record, and of course, this court cannot take them into consideration. Moreover, the circumstances surrounding this unfortunate injury create, we think, more than an inference of negligence. We think it was negligence for the company to permit detached cars not properly attended to run from the drift mouth by gravitation down the track, where it might be reasonably expected that the children of the employees of the company using the houses appurtenant to the track would likely be in a place of danger. *Smith* v. *Sunday Creek Co., supra.* We do not mean to say that defendant cannot show that it was without fault; but it has not sufficiently done so to justify the court in taking the question from the jury. The evidence on another trial may completely and beyond peradventure exonerate defendant from negligence. In considering a motion to instruct for defendant the court's action should be guided by what it would do if the jury had returned a verdict for plaintiff, and a motion made to set it aside and grant a new trial on the ground that the preponderance of evidence was in favor of defendant. In that event all inference which the jury could justifiably draw from the evidence should be considered; and all of defendant's evidence in conflict with plaintiff's evidence must be discarded.

There is evidence from Mabel Kiser that she had frequently in years past seen cars coming from the drift mouth past the tenement houses, by gravitation and unattended. While we think this was proper evidence to be considered by the jury in connection with all the other facts, both plaintiff and defendant joined in a motion to exclude it from the jury, and the court did so. Plaintiff in error cannot complain of an error which he induced.

Error is assigned because the court refused to allow Hugh Tabor, a witness for plaintiff, to say what was the custom among the coal operations in that vicinity as to requiring a brakeman to ride on the rear end of the trip of cars coming out of the mine. We do not think this was error, because

what custom and practice existed at the mines in that vicinity would have no bearing upon what was done at defendant's mines in that regard. It was not attempted to show that the other mines in the vicinity were similar to defendant's mine or operated in the same manner. Failure to follow custom and practices at other mines would not necessarily convict defendant of negligence because it did not follow those customs. No attempt was made to show that it was the usual custom at defendant's operations for the brakeman to ride upon the rear of the trip. The question as to whether his failure to do so was negligence was not attempted to be shown by any one familiar with the operation of such trips. Witness Tabor did not seem to know where defendant's mine was located, and nothing about the conditions surrounding its operations.

The judgment will be set aside and a new trial awarded.

*Judgment reversed; new trial*