BERTHA BROWNING *v.* MONONGAHELA TRANSPORT COMPANY

(No. 9483)

Submitted September 7, 1943. Decided November 2, 1943.

*John B. Wyatt* and *Haymond Maxwell*, for plaintiff in error.

*Steptoe & Johnson* and *Oscar J. Andre*, for defendant in error.

Fox, JUDGE:

The plaintiff, Bertha Browning, instituted her action at law against Monongahela West Penn Public Service Company, and Monongahela Tranport Company, both corporations, in the Circuit Court of Harrison County. The action was later dismissed as to the first-named defendant. The case was then tried against the Monongahela Transport Company, resulting in a verdict in favor of plaintiff for nine thousand dollars. On motion of the defendant, the trial court set aside this verdict and granted a new trial, and to this action we granted this writ of error. The parties will be referred to as "plaintiff" and "defendant", the positions they occupied in the court below.

The basis of plaintiff's claim may be briefly stated as follows: On August 26, 1940, she boarded a bus operated by defendant. The bus was stopped on a street where there was considerable grade, and at a point where it was ascending the grade. One or more passengers boarded the bus at that point, and plaintiff was preparing to leave it. For some reason the brakes did not hold the bus in position, and it began to drift backwards down the grade, and there was apparent danger that it might drift back

into the line of traffic, passing along another street intersecting that on which the bus was stationed. At that time plaintiff was in a standing position near a side entrance, holding to an upright iron rod fastened to the floor and ceiling of the bus. It is contended that the bus stopped suddenly and in such a way as to cause plaintiff to lose her balance, and she was thrown against the upright rod, against a seat and into a seat, and, it is averred, suffered severe injuries. Her action is based solely on the allegation of her declaration that in these circumstances, the "said operator and driver of said bus and motor vehicle in some mechanical way and manner, carelessly, negligently and unlawfully, without warning, suddenly brought said bus to a forceful and violent standstill and stop, and from the force thereof the hand-hold of your plaintiff upon said upright was torn loose and her body thrown with force and violence against a nearby seat, from which the body of your plaintiff rebounded against said iron post, and from said iron post the body of your plaintiff again rebounded back into a nearby seat."

Specifically, the evidence of the plaintiff is to the effect that she boarded defendant's bus at the corner of Fourth and Pike Streets, in the City of Clarksburg, and travelled to the corner of Milford Street and Euclid Avenue; that she pulled the stop cord at this intersection, and that the operator stopped the bus after it had turned the corner; that she then started to leave the bus, had reached the side entrance, and had taken hold of the iron rod mentioned above; that at that time the bus started to drift backwards, the bus driver was then engaged in trying to recover a coin which he had dropped to the floor; that she was about four months advanced in pregnancy at that time, and when she saw the bus begin to drift backwards she hesitated as to whether she should jump from the bus or remain thereon; that she looked at the driver, who was still reaching for the coin, and then looked back at the traffic approaching on Milford Street, thinking there would be a crash, and as she looked "the bus jerked me

and jerked me into that rod and my left foot slipped and as I was jerked into that rod and backwards I struck my spine in something, and, after I could see, I was sitting in the first seat behind the rod, and I was sitting there and the driver was standing about middle ways of the bus saying 'Oh my, oh my, are you hurt?' was the next I remember." She testified that a young lady by the name of Virginia Stealey boarded the bus about the time of this accident. Miss Stealey testified that she was standing in the bus at the time it began to drift backwards and at the time it was stopped, and that there was what she calls "a jerk" at the time it was stopped, and that she protected herself against it by holding to the rod near the driver's seat. Another witness, Oma Hall, says that she got on the bus on Milford Street, and, in purchasing tickets, gave the driver a quarter, which he dropped on the floor. She says that after the bus stopped at Euclid Avenue, and Miss Stealey got on, she noticed that it "started to drift back very slight, and, in fact I hardly knew it was traveling backward until Mr. Strother stopped it. At that time he was attempting to get the coin which had been dropped on the floor". When asked if the bus stopped with a jerk or jar, she said, "I didn't notice any. There may have been a very slight one, but I didn't notice any. I was sitting, of course, but I didn't notice any particular jerk or jar". The driver, Chester Strother, testified that the bus drifted back six or eight feet, and that when it had drifted two or three feet he applied the brakes "as easy as I could", and when asked, "did you jerk the bus?" stated, "Yes, slightly, but not enough to throw anybody around. Not to amount to anything." The evidence is that the bus drifted from six to ten feet, and it seems to be conceded that the time which covered the drifting of the bus and the stopping of the same, was about eight seconds, so that the speed of the drifting must have been very slow. It is clear that there was some jar or jolt; that it came suddenly; and that plaintiff was thrown off her balance and probably suf-

fered some injury; but the nature and extent of her injuries are less clear.

The plaintiff left the scene of the accident and went to the home of a Mrs. Wilson, for whom she was doing work. She complained at that time of being sick as the result of her injuries. Two days later she consulted Dr. Post. She had been examined by him about July 20, 1940, and again about a week before the accident, and, except for her pregnancy, was then in a normal condition of health. When she was examined after the accident there were some signs of swelling on the right side of the middle portion of her body, which the physician attributed to flesh bruises and he paid no particular attention to them. She had some fever at that time, which left her in about a month. Her child was born about five months after the accident, and there was a normal birth and no complications. However, some condition which caused a limp and severe pain persisted, and Dr. Post then referred plaintiff to Dr. Humphries, an orthopedic surgeon, who made a rather complete examination of plaintiff and took several X-ray pictures. This examination was probably about two months after the birth of her child. Dr. Humphries testifies that he found that she had a tenderness over the posterior portion of the bone called the right ilium, and in the right iliac joint, and also over the right lumbar sacrum joint, where it joins on the sacrum. He uses much language to explain the technical maladjustments of the bones, which he says could have caused the pain from which plaintiff claimed to be suffering. He states, in effect, that these troubles might be relieved through surgery. Dr. Post was of the opinion that plaintiff's condition was of traumatic origin, but Dr. Humphries states, "It is impossible to definitely state from traumatic origin", but that from the history of the case, "I think it is". The defendant introduced Dr. Sloan, who examined plaintiff on October 3, 1941, and who testifies to finding certain maladjustments of the bones in the region of the spine and sacrum, which he attributes to the general con-

dition which exists at birth, or from natural formations of the body. He definitely states that the condition he found "was unquestionably a congenital malformation or condition resulting in the developing of the bone and not as the result of an injury". He further states that he found plaintiff "had distinct evidence of inflammation of the joints between the last vertebra of the lumbar spine and the sacrum, and some evidence of inflammation in the joint between the sacrum and ilium or large pelvic bone"; and also "she had what was evidently a chronic type of inflammation which had been in existence for some time; not that which produces a marked change in the bone but more definitely an arthritis or inflammation of the joint. We have some inflammations in which the bone is involved, but not her case. The joint seemed involved rather than the bone". We interpret this testimony to mean that, in his opinion, she was suffering from arthritis, which he says possibly resulted from diseased tonsils. In answer to a hypothetical question, Dr. Sloan stated that he did not think the continued rise of temperature could be attributed to the accident; and in answer to another like question concerning the nature of plaintiff's usual occupation, being that of working in a cleaning and pressing establishment, and operating a pressing machine, he stated that such work might be a definite factor in causing trouble of this character. In this connection, it should be stated that there seems to have been a recurrence at times of the elevation of temperature, and plaintiff testified that she suffered pains continuously, which she claims were the result of her accident; and there is also evidence that there was some displacement of the womb and its adhesion to the back part of her body, which developed after the birth of her child.

The trial court relied on four grounds for setting aside the verdict: (1) That primary negligence on the part of the defendant had not been shown; (2) that if there was such primary negligence, plaintiff was guilty of contributory negligence which barred recovery; (3) that the

verdict of the jury included damages for the physical condition of plaintiff not caused by the accident and was excessive; and (4) that the court erred in refusing to give instruction No. 5 offered by defendant.

We have stated the testimony, touching what occurred at the time of this accident. The trial court was of the opinion that the sudden stopping of the bus by the application of brakes, and, as in this case, where it had only drifted not to exceed ten feet and at a slow rate of speed, could not possibly have caused all of the injuries of which the plaintiff complains, and we are not disposed to find fault with its conclusion. We are fully aware of the rule which gives to a jury the widest character of latitude in matters of this kind; but there is a limit beyond which juries are not permitted to go. All human experience teaches us that a heavy vehicle, such as a motor bus used in the transportation of passengers, causes some jerk or jolt when it is stopped; and the authorities are ample that such jolts and jars are not actionable unless they are brought about by careless and negligent conduct. Here the operator of the bus may have been negligent in permitting the bus to drift back, but we do not think he was negligent in stopping the bus once it had begun to drift; nor do we think that the mere application of the brakes in stopping the bus, with the consequent jar, was negligent, unless in circumstances where it could be said that careless or negligent conduct made the stoppage more sudden and more violent than the occasion required. Two other passengers on this same bus testified as to the drifting and stopping of the bus, one saying that there was a jar and jerk which did not throw her off balance because she was holding to an upright; and the other stating that she did not notice the jar, although she admits that there might have been some jar. In the very nature of things, a violent or abrupt stoppage of the bus from the application of brakes, could not occur when it had not moved more than ten feet and at a very low speed. "Courts are not required to believe that which is con-

trary to human experience and the laws of nature, or which they judicially know to be incredible". *Owen* v. *Appalachian Power Co.,* 78 W. Va. 596, 89 S. E. 262; *Marshall* v. *Conrad,* 118 W. Va. 321, 191 S. E. 553; *Acree* v. *Eureka Pipe Line Co.,* 122 W. Va. 242, 8 S. E. 2d 186.

If there was not primary negligence, there was necessarily no contributory negligence, and it may be improper to discuss that question. However, we doubt that what plaintiff did on that occasion amounted to contributory negligence. It is easy to say that she had time to take a seat, or that she could have taken a more firm grasp on the iron upright, or that she could have alighted from the bus. What people do under given circumstances depends upon many things. Here was a woman who, on account of her condition, was more or less hampered as to her physical activities. We cannot say as a matter of law that what she did there amounted to contributory negligence, had primary negligence of the defendant been shown.

The jury returned a verdict for nine thousand dollars, a very substantial verdict. The evidence that the present condition of plaintiff is due to her injuries is not at all satisfactory. In the first place it seems incredible that all of the ailments of which plaintiff complains could have resulted from what happened. When we take the testimony of three reputable physicians, conflicting in some degree, and consider the same as a whole, we fail to find any convincing evidence that plaintiff's present condition is due solely to her accident. Evidently from the amount of the verdict, the jury must have believed that plaintiff's state of health was the result of her accident, and that nothing else contributed thereto. In the circumstances, we think the court had the right to question this verdict and the amount thereof. We are met with the perplexing problem of fixing the weight to be given the verdict of a jury, against that to be given the action of a trial court in setting it aside. We need not comment on the weight to be given a verdict in an

appellate court, where it has the approval of the trial court. That is so well established as to need no citation of authority. But where it does not have that approval, a different situation is presented. "A verdict which has been disapproved by the trial judge is not entitled to the same weight as one which the trial judge has permitted to stand." *Harris* v. *Howerton,* 169 Va. 647, 194 S. E. 692. Admittedly, where the evidence is sufficient to sustain a verdict, judgment should be entered thereon, and the action of a trial court in setting it aside will be reversed, the verdict reinstated, and generally judgment entered here; but where there is substantial doubt as to the correctness of the verdict, particularly as to the amount thereof, and the trial court has resolved that doubt against the verdict, its action in setting it aside is entitled to great weight in an appellate court. The reasons for this rule, so far as they apply to the evidence, are familiar. The trial court has opportunities to observe many things in the course of a trial which the printed record presented to an appellate court does not disclose; and then there is, ordinarily, lack of finality in the action of setting aside a verdict and granting a new trial. All this leads to the rule that an appellate court is the more disposed to sustain a trial court in setting aside a verdict and granting a new trial, than when the action results in a final judgment on the matter in controversy.

We have indicated above that we think the trial court was justified in setting aside this verdict, on the theory that plaintiff had failed to show actionable negligence on the part of the defendant. We think he was likewise justified in setting aside the verdict because of the plaintiff's failure to establish, in any definite way, that her condition, at the time of the trial, was the result of the accident in question. In *Ross* v. *Lake & Export Coal Corp.,* 92 W. Va. 229, 116 S. E. 155, this Court held: "If, in such an action, uncertainty and indefiniteness are found in the evidence respecting the amount of damages suffered by the plaintiff, of such degree or gravity as to call

forth the deliberate and serious judgment of the trial court, as to whether a substantial part of a large amount assessed as damages by the jury and awarded by their verdict is sustained by the evidence, a judgment or order setting aside the verdict, on the ground of excessiveness, and founded upon such infirmity in the evidence and impressions presumptively derived by the trial judge, from his observation of the witnesses and parties, their appearances, conduct and demeanor, in the court of the trial, will not be disturbed by the appellate court." This was a civil case based upon a contract, but the same rule was applied in the personal injury case of *Walke* v. *Premier Pocahontas Collieries Co.*, 94 W. Va. 38, 117 S. E. 905, wherein the Court held that, "Where in an action for personal injuries the verdict is large considering the character and permanency of the injuries, and the trial court has set aside the verdict on this as one of the grounds assigned, great respect should of course be accorded to the judgment and opinion of the trial court, and it will not be disturbed except when clearly wrong." In that case, however, this Court reinstated the verdict because it did not believe the trial court had been justified in setting it aside. But the rule is clearly stated, and we think applies to this case. Here the verdict is large, and there is little doubt but that the jury arrived at its verdict from a consideration of some ailments of the plaintiff which cannot be reasonably attributed to the injuries suffered by her in the accident in question.

One of the grounds assigned by the trial court for setting aside the verdict was its refusal to give defendant's instruction No. 5, which reads as follows: "The court instructs the jury that the mere fact that the bus was stopped suddenly by the operator thereof does not of itself prove or establish any negligence on the part of the defendant, or even gives rise to a presumption that the defendant's operator was then and there negligent".

Merely as an abstract statement of law, the instruction no doubt states a correct principle; but we do not think it

should have been given in this case. We think it singles out one proposition, namely, the rule that should apply where a bus is merely stopped suddenly; whereas, the case being tried here, under the plaintiff's declaration, was based upon the charge that the driver "carelessly, negligently, and unlawfully, without warning, suddenly brought said bus to a forceful and violent standstill and stop". Abstract instructions are never favored, although cases are rarely reversed on that ground, where no apparent confusion arises therefrom. In this case we think this instruction was calculated to confuse. The mere sudden stopping of a bus might not be negligence, but, stopping under the averments of the declaration, if established by evidence, might justify a jury in finding negligence, and the plaintiff was entitled to have the theory followed in her declaration presented to the jury, by instructions. The singling out of a part of that theory was not proper. Recognition should have been given to this element of plaintiff's case. We think the trial court was correct in its refusal to give this instruction, and, therefore, would not have been justified in setting aside the verdict on account thereof.

The action of the Circuit Court of Harrison County, in setting aside the verdict and awarding a new trial, is affirmed.

*Affirmed.*