DRUE FLOY CUNNINGHAM

*v.*

THE PARKERSBURG COCA-COLA BOTTLING COMPANY,
*A Corporation*

(No. 10489)

Submitted January 20, 1953. Decided February 17, 1953.

*Ambler, McCluer & Davis,* for plaintiff in error.

*Eugene T. Hague* and *Orville L. Hardman,* for defendant in error.

GIVEN, JUDGE:

Plaintiff, Drue Floy Cunningham, obtained a judgment, based upon a verdict of the jury returned in the Circuit Court of Wood County, against the defendant, The Parkersburg Coca-Cola Bottling Company, for $3,000.00, for personal injuries suffered by plaintiff, and alleged to have been the proximate result of negligence of defendant in delivering unto the grocery store of the husband of plaintiff, where plaintiff was employed, a defective paper board carton containing six bottles of Coca-Cola. Defendant contends that the evidence before the jury failed to establish any negligence on the part of defendant, and that plaintiff was guilty of contributory negligence which was the proximate cause of her injury.

As to the controlling facts, no conflict exists in the evidence. The defendant, engaged in the business of bottling and selling Coca-Cola, furnished unto the husband, for use in his store, a metal rack for displaying

Coca-Cola. The rack was so constructed that twenty-eight six-bottle packs of Coca-Cola could be placed thereon. It was the practice of defendant to deliver Coca-Cola to the store three times each week. The driver making the deliveries, an employee of defendant, would place on the rack, at each delivery, a sufficient number of the six-bottle packs to completely fill the rack. The number of packs delivered would be twenty-eight, less the number of six-bottle packs found by the driver to be on the rack. Empty packs would then be picked up by the driver and returned to the plant of defendant. These deliveries were so made by the employee of defendant without any help or suggestion from the owner of the store. The driver, at the time of the delivery, would either collect from the owner of the store for the Coca-Cola delivered, or make a charge therefor to his account.

The cartons, in which the six-bottle packs were so delivered, were constructed of paper cardboard, and designed to hold six bottles of Coca-Cola in an upright position, the bottles therein being kept apart by paper board partitions, and the cartons having handles, also constructed of paper board, to facilitate easy handling of the packs. It was the invariable practice of the store to deliver to customers Coca-Cola in the cartons in which it had been delivered to the store, and the defendant knew of that practice and approved it. Plaintiff had worked in a grocery store with her husband for approximately forty years, and had assisted in the selling and delivering of Coca-Cola in such packs for a number of years.

Injury to plaintiff occurred on the 8th day of July, 1949, while she was removing a six-bottle pack from the metal rack. She testified to the fact that while removing a six-bottle carton from the rack, the bottom of the carton holding the six bottles fell out, some of the bottles dropping and breaking on the floor. Glass from one of the broken bottles struck the index finger of the left hand of plaintiff, severing the flexion tendon and damag-

ing the digital nerve, causing severe suffering and permanent injury.

The store mentioned was described as a self-serve store. Plaintiff testified that customers, including children, handled the cartons of Coca-Cola after delivery thereof to the store. No one testified as to the condition of the particular carton at the time of its delivery to the store, or at any time before the injury, although plaintiff testified that, at the time of the injury, "it was an old carton, it couldn't have possibly been a new carton—just by lifting it off the rack, it wouldn't have fell apart if it had been a new carton—it was absolutely an old and rotten and frayed carton." No facts in the record, however, tend to establish such conclusion. It is not shown how long the particular carton had remained in the store, but certainly not less than three days, for no delivery to the store was made between the 5th of July, and the 8th of July, when the injury occurred. As to the removal of cartons from the rack, plaintiff testified: "Well, it is just in there, they are placed in there so tight, you know, when you pick one up, you can't hardly see the body of the carton. You pick one up by the handle, you don't see the shell very plainly. We never think to look at a carton to see if it is good, we pick up the carton by the handle to hurriedly put it in an order."

On behalf of defendant, it is shown, and not disputed in the evidence, that an experienced employee of defendant carefully inspected all cartons returned to the plant, and that any defective carton was not reused, but discarded; also, that all drivers of delivery trucks were instructed, as part of their duties, to examine the cartons at time of delivery to a customer, and to discard any carton found to be defective. The driver making deliveries to the store in question testified to the effect that he made such inspection at the time of deliveries to the store, but could not, of course, remember inspecting the particular carton mentioned.

Are the facts detailed sufficient to sustain a finding of negligence, on the part of defendant, in the delivery of

a defective carton? Negligence, or facts from which negligence must be inferred, must be proved, not assumed. *Fleming* v. *Hartrick,* 100 W. Va. 714, 131 S. E. 558. Of course, the Court should accord unto the evidence of plaintiff every reasonable and legitimate inference favorable to plaintiff before setting aside a verdict. *Homes* v. *Monongahela Power Co.,* 136 W. Va. 877, 69 S. E. 2d 131. In the instant case, however, we can plainly see that no necessary, reasonable or legitimate inference of negligence on the part of defendant arises from the facts proved.

At most, the evidence establishes that the paper carton, from which the bottles fell, was defective at the time plaintiff lifted it from the metal rack. It is common knowledge that paper cartons or other paper containers, if wet or handled improperly, may become weak and incapable of performing the functions for which manufactured. Here there was ample opportunity, for illustration, for customers of the store to have created the condition which caused the carton to become defective. Ample opportunity to have done so is clearly established, for the carton had been delivered by the defendant to the store at least three days prior to the time the injury occurred, and possibly longer. There is no showing whether the cartons used were manufactured by the defendant or purchased from a manufacturer. Neither is any contention made that the particular carton possessed any inherent defect. In such circumstances, a conclusion that negligence of defendant was the proximate cause of the injury is not warranted.

Plaintiff, however, would apply the *res ipsa loquitur* rule, upon the basis of holdings in cases such as *Parr* v. *Bottling Works,* 121 W. Va. 314, 3 S. E. 2d 499, where a harmful substance was found in a bottle of Coca-Cola; *Webb* v. *Brown & Williamson Tobacco Company,* 121 W. Va. 115, 2 S. E. 2d 898, where some foreign substance was found in a plug of chewing tobacco; *Blevins* v. *Bottling Works,* 121 W. Va. 427, 3 S. E. 2d 627, where "rotten meat" was found in a bottle of Coca-Cola; and *Holley* v. *Baking*

*Co.,* 128 W. Va. 531, 37 S. E. 2d 729, 167 A. L. R. 648, where a small wire was found imbedded in a cake sold in its original package. In these cases, so called "sealed package cases", the rule was held to apply only because no opportunity existed for any negligence on the part of any person other than the manufacturer. This is not true in the instant case. Neither can we apply the rule, in the instant case, on the theory that at the time of injury the article causing the injury was under the exclusive control of defendant. In the instant case the carton alleged to have been defective was not under control of defendant, and had not been for at least three days prior to the time of injury. The proprietor of the store undoubtedly had the right to control of the carton from the time of delivery to the store. See *Wright* v. *Valan,* 130 W. Va. 466, 43 S. E. 2d 364. While not fully in accord with some of the holdings of this Court, a very helpful article, The Procedural Effect of Res Ipsa Loquitur, by Professor William L. Prosser, may be found in 20 Minnesota Law Review 241.

In *Robey* v. *Bottling Works,* 192 Va. 192, 64 S. E. 2d 723, a case very similar to the instant case, the Court stated:

"The gist of the plaintiff's case is that the carton was worn and defective from previous use when it left the defendant's possession and was placed in the Burton store; that such defect could or should have been discovered by a reasonable inspection before committing the carton to re-use, and that a proper inspection was not made.

"The trouble with this argument is that it assumes the very factors which the plaintiff was required to prove. There is no presumption that the carton was defective when it left the possession of the defendant, and no evidence that it was. Examined on the subject, Smith, the delivery boy in the store, testified that he did not know whether the carton was damaged or broken before it was placed in the store or while it was there. There is no other evidence on the subject.

"While the evidence shows that the defendant's employee daily replaced the cartons which had been re-

moved from the rack, there is no showing how long this particular carton had been there, or whether it had been damaged while there. Obviously it may have been damaged after it had been placed in the store, and was in the exclusive control of the retailers, by being mishandled by anyone who had easy access thereto."

In *Rockwell* v. *Queen City Bottling Co.*, 73 Ohio App. 42, 53 N. E. 2d 528, another very similar case, the Court stated:

"Plaintiff alleges and offered to prove merely that defendant put the carton in circulation and the happening of its collapse, while out of the possession and beyond the control of defendant, mentioning no act or omission to act of defendant in connection therewith, and leaving to utter speculation and the limitless field of guess work as to what did or did not happen to the carton after being placed in the hands of the retailer. If these be the ultimate facts, they fail to state a cause of action on an implied warranty as to fitness for a particular use or in an ordinary negligence case. If the so-called cursory inspection of the defendant amounted to negligence, there is an utter lack of any causal connection between that and its being the proximate cause of the injuries here."

In *Young* v. *Hartford Accident & Indemnity Co.*, 47 So. 2d 365 (La., 1950), the action was by a customer, and her husband, against a retail store proprietor selling Coca-Cola, and the Coca-Cola Bottling Company. The Court held the evidence established that the carton from which a bottle fell was torn at the time the customer removed it from a stack, and held only the bottling company liable, since the employee of the bottling company placed the carton on the rack, and since no proof showed that the torn condition of the carton was known to any employee of the retail store. There is nothing in the opinion, however, to indicate that other parties handled the cartons. The opinion expressly points out that "The circumstances were such as to clearly rule out any possibility that Mrs. Young could have tampered with the carton or caused

same to be torn prior to the accident." See also 1 Shearman and Redfield on Negligence, Section 56 (Revised Edition).

In view of the conclusions reached, we need not consider the question relating to contributory negligence of plaintiff. Neither need we consider questions raised as to the giving to the jury of plaintiff's instructions Nos. 1, 4 and 7. Assuming the instructions state correct principles of law, they have no application in the instant case, there being no evidence on which they could be based.

It necessarily follows that the judgment of the Circuit Court of Wood County must be reversed, the verdict of the jury set aside, and a new trial awarded.

*Reversed;*
*verdict set aside;*
*new trial awarded.*