WILLIAM EDWARD KEFFER

V.

LOGAN COCA-COLA BOTTLING WORKS, INC.

(No. 10770)

Submitted April 18, 1956.     Decided June 19, 1956.

*Valentine & Beddow, Mark T. Valentine,* for plaintiff in error.

*Casto & Wilson,* for defendant in error.

RILEY, JUDGE:

William M. Keffer instituted this action of trespass on the case against the Logan Coca-Cola Bottling Works, Inc., (sometimes referred to in the record as "Logan Coca-Cola Bottling Company"), a corporation, in the Circuit Court of Logan County, West Virginia, to recover damages for the alleged permanent injury to his right eye, which was struck by a fragment of glass caused by the bursting of one of ten bottles of Coca-Cola, which had been sold to Amherst Coal Company's Store at Paragon Mine, in Logan County, and delivered to its wareroom by the defendant, and which plaintiff had purchased from a clerk at the coal company's store, after the clerk had placed the bottles in a cardboard box, and delivered the cardboard box containing the ten Coca-Colas to the plaintiff at the grocery counter of the store.

To a judgment in the amount of six thousand dollars in favor of the plaintiff, based upon the verdict of a jury, this writ of error is prosecuted.

The declaration alleges that the defendant, Logan Coca-Cola Bottling Works, Inc., owns a plant in which it manufactures, sells and delivers a product commonly known as "Coca-Cola" at wholesale to various and sundry merchants in and about the City of Logan and elsewhere; that the defendant corporation in the course of its deliveries had delivered to Amherst Coal Company's Store at Paragon Mine cases containing bottles of Coca-Cola, which included the ten bottles purchased by the plaintiff; and that no person other than the defendant corporation and the plaintiff had moved or touched the Coca-Cola which the plaintiff had purchased from a clerk behind the grocery counter of the Amherst store, until the grocery clerk "lifted it from the cases and placed it on the counter; and the plaintiff, who moved the paper box for a distance of two or three feet from one counter to another; that the said clerk and the plaintiff in moving said coca-cola bottles in said paper box did so in a careful and prudent manner."

The gravamen of the declaration is that it was the duty of the defendant bottling works to use due and proper care in the inspection of the bottles in which it placed the drink, commonly known as "Coca-Cola", and to deliver the same to the coal company's store in good condition; but that notwithstanding such alleged duty on the defendant's part, the defendant "* * * carelessly failed to detect the defective bottle which exploded and that as a proximate result of said explosion, the plaintiff suffered severe and permanent injuries in and about his right eye; that the bottle, which exploded, struck the plaintiff in the right eye, * * *."

The record discloses that the plaintiff purchased ten bottles of Coca-Cola at the grocery counter from Avonelle Hager, a clerk; and, according to said clerk, she carefully picked up the ten bottles of Coca-Cola from a case in the wareroom, carefully placed them in a cardboard box, tightly so that the bottles did not have room to move around, and then placed the cardboard box, containing

the ten bottles, carefully on the counter, so that the bottles could not "rattle" or bump together, near the cash register where the plaintiff had purchased groceries, as well as the bottles of Coca-Cola. Mrs. Hager, the Clerk, testified that the bottles of Coca-Cola were purchased at wholesale by the coal company and were delivered by defendant's drivers to the wareroom of the store, where the cases were stacked by such drivers in separate piles away from the wall, and were separated from the drinks of other manufacturers.

Plaintiff's witness, Zella Cummings, testified that during the three years of her employment at the coal company's store, the defendant bottling company delivered the filled bottles of Coca-Cola to the wareroom at the Paragon store in cases, and stacked the cases in the same place in the wareroom, in separate stacks, with walls between the stacks and away from the wareroom wall.

After the cardboard box had been placed on the grocery counter, plaintiff moved it carefully a short distance away, and placed it on the counter of the store, where meat was sold, which counter adjoins diagonally the counter on which Mrs. Hager had placed the cardboard box containing the Coca-Cola. After plaintiff had moved the cardboard box to the meat counter, which he testified was done carefully, he finished making his purchases at the store, and then went to the office of the store on the opposite side of the storeroom, where he exchanged some scrip, and then returned to the meat counter, where, just as he turned toward the meat counter to pick up the cardboard box containing the ten bottles, one of the bottles exploded or burst while in the cardboard box, scattering fragments of broken glass in several directions, one of which struck plaintiff in his right eye.

After receiving local medical care, plaintiff was treated by Dr. Albert C. Esposito, an eye specialist in Huntington, from whose testimony it appears that the glass fragment which struck plaintiff in or around his eye, cut the cornea of the eye, which is the clear part of the front of the human eye, resulting in the protrusion of a small

portion of the iris of the right eye. Dr. Esposito placed back into position the small portion of the iris which was protruding, sutured the cornea, injected air behind the cornea, and for some time thereafter kept the plaintiff under observation. Dr. Esposito further testified that the area of the eye which he treated "has healed fairly well", and that plaintiff did not have a very great need for glasses at that time; but he did testify that plaintiff has suffered permanent injuries in that there is and will be a corneal scar and atrophy of the iris, by the latter of which Dr. Esposito explained: "The area of injury as we mentioned previously has healed with the scar formation. The atrophy of the iris will continue until it will be almost paper thin. That means that the normal function as we mentioned previously has been lost and the normal density, or shall we say thickness, will continue to be lost until only a very thin paper-like structure will remain. This we can show with our instruments of which the slit-lamp is one. This will allow us to put a beam of light into the eye and the beam of light will go directly through the iris in view of the atrophy which will continue to occur. The ability to contract and dilate is, and of course will be completely lost and the adhesions which have formed between that portion of the atrophic iris and the lens will become more fixed inasmuch—well, we get into possibilities again."

The plaintiff testified that he had, as the result of his injury, incurred medical expenses in the following amounts:

Statement rendered to him by Dr. Esposito $265.00
St. Marys Hospital in Huntington .    _ _  50.00

making a total of $315.00. Neither the plaintiff, Dr. Esposito, nor anyone connected with St. Marys Hospital, where the plaintiff was treated, testified that the medical and hospital expenses were reasonable and necessary.

At this point it may be remarked that as the verdict of the jury and the judgment of the Circuit Court of Lo-

gan County were in the lump sum of six thousand dollars, this case does not, under the holding of this Court in *Konopka* v. *Montgomery Ward and Company*, 133 W. Va. 775, 58 S. E. 2d 128, lend itself to a remittur.

While this record establishes beyond peradventure that the ten bottles of Coca-Cola were carefully handled from the time they were placed in the pasteboard box by Mrs. Hager and later placed on the meat counter by plaintiff, this record is silent in a number of details which would be essential to the application of the doctrine of *res ipsa loquitur*, under the holding of this Court in the cases of *Webb* v. *Brown & Williamson Tobacco Co.*, 121 W. Va. 115, 2 S. E. 2d 898; and *Holley* v. *Purity Baking Co.*, 128 W. Va. 531, 37 S. E. 2d 729, 167 A. L. R. 648, cases in which the juries found that the plaintiffs were injured by foreign substances in what they may be deemed original packages.

In the first place there is no evidence from which the jury could reasonably infer how long the Coca-Cola bottle, the bursting of which caused plaintiff's injury, had been in the Paragon Store. No substantial evidence was introduced by the plaintiff as to when deliveries of Coca-Cola were made by the defendant. Thus the evidence is silent as to how and when the retailer, Amherst Coal Company, made any purchases of Coca-Cola from the defendant, Logan Coca-Cola Bottling Works, Inc., and the evidence affirmatively establishes that the employees of bottling companies other than defendant had access to the wareroom in the Paragon Store, and that the cases were stacked therein by these various employees, including the cases of Coca-Cola which were sold by the defendant to Amherst Coal Company for its Paragon Store, which latter cases were stacked separately from the other cases of bottles containing soft drinks.

Likewise this record affirmatively shows that five of the employees of the Paragon Store had access to the wareroom, yet none of these store employees testified as to the handling of this bottle or the cases of bottles of

soft drinks in the wareroom. It also appears from this record that a boy was employed to clean and take care of the wareroom, who could and might have moved and restacked the cases of Coca-Cola, including the one from which the ten bottles were removed by Mrs. Hager. This boy did not testify as to the manner in which, if at all, he handled the cases of soft drinks stacked in the wareroom.

It is unnecessary for this Court in the case at bar to decide whether in some circumstances the doctrine of *res ipsa loquitur* may be applied in a case for personal injuries allegedly caused by the bursting of a bottle, where, unlike in the case at bar, there was no intervening cause shown to have caused the bottle to burst. Though in this regard the recent case of *Cunningham* v. *Parkersburg Coca-Cola Bottling* Co., 137 W. Va. 827, 74 S. E. 2d 409, which involved the giving away of the bottom of a paper carton containing Coca-Cola, causing a bottle to fall to the floor, the fragments of which allegedly injured the plaintiff in that case, does not bear pertinently on the decision of the case at bar, we are, however, of opinion that this Court should not depart from the rule set forth in syllabus 2 of the *Cunningham* case, which reads: "Actionable negligence cannot be inferred from facts establishing only that a defendant bottling company sold and delivered for resale, and placed upon a rack furnished by the defendant to a retail store for display purposes, Coca-Cola in paper carton packs containing six bottles each, that the cartons were of the type usually used in the trade, and that customers of the retail store sometimes handled the packs."

As the gravamen of the negligence charged in the declaration is the failure of defendant bottling works to inspect the bottles either before, during, after, and certainly before delivery to the retailer, it is interesting to note and certainly important to determine whether this case was properly for jury determination, and to direct attention at this point to the evidence bearing on the

duty and the performance of that duty by the bottling works in the inspection of its bottles before delivery was had to the coal company's store. Because of the limitation in the allegation of the declaration, which consists of the gravamen thereof bearing on the question of negligence, it is important to review somewhat in detail the evidence concerning the bottling process at Logan Coca-Cola Bottling Works, Inc., as disclosed by this record. An examination of this record shows that it was the practice of the defendant bottling works to remove the empty bottles from the cases, each of which held twenty-four bottles, and the empty bottles were then placed in a washer where they were cleaned with caustic soda at a very high degree of temperature. Thereafter, as the bottles come out of the washer they are lying on their sides, and in the process of moving out are set upright in rows of twelve each on a conveyor, which then carries the bottles past the empty bottle inspector, who views them under a flourescent light as they pass her at the rate of one hundred and twenty bottles a minute. During this process the empty bottle inspector is supposed to make one inspection of each bottle as it is lying down and one as it is standing upright, that is, two inspections for each bottle every one-half second. It is testified to in this case beyond successful contradiction that because of the bright lights at the empty bottle inspector's place and at the full bottle inspector's place, the inspectors are relieved every one and a half hours. As the bottles pass through the filler and crowner, they are filled with Coca-Cola and capped with an internal pressure of forty-five to fifty pounds a square inch. Likewise by uncontradicted evidence in this case, after the bottles are filled, they are again inspected under light for such conditions as contamination, foreign objects, sediment in the bottles, and for chips in the bottles.

After the bottles are filled they are mechanically, or at least automatically, placed in cases, and the filled cases then go to the stockroom of the defendant bottling

company. Although the inspection given and testified to is purely visual under lights, it is admitted in this record that defective bottles might well pass unnoticed. In fact, Birdie Butcher, plant superintendent of the bottling works, testified that he had found bubbles in bottles, and that bottles with such bubbles in them are thrown away; that most of the bubbles are found in the "bottom of the bottles next to the heel"; that it is seldom that bubbles are found above the bottom of the bottles; and that, if there are any such bottles with bubbles in them, they are discarded.

H. E. Fulcher, Professor of Physics at Davidson College, of Davidson, North Carolina, testified that in the bottling process the "bottles get fairly rough treatment"; and that "if a bottle gets a permanent injury, and, if the bottle, after assuming that condition, is allowed to rest it does recover some." Professor Fulcher further testified that in haulage of bottles for a mile or two over ordinary roads, the bottles would receive some "thermo" shock. This witness ventured the opinion that with the temperature here, evidently meaning in Logan County, West Virginia, any bottle with a "severe crack" would certainly give way "where you have a maximum pressure inside."

Though the foregoing disposes of defendant's first and third assignments that the verdict is contrary to the law and the evidence, and defendant's second assignment of error to the effect that damages awarded to plaintiff in the amount of six thousand dollars, based upon a jury verdict, is excessive, the other assignments of error, which we deem worthy of consideration, involve the court's rulings in giving and refusing instructions, which rulings are set forth as defendant's assignments of error Nos. 4, 5, and 6.

Defendant's assignment of error No. 4 is that the court erred in giving plaintiff's instruction No. 1, as modified. While this instruction submits to the jury the right to draw an inference of negligence from the bur-

sting of the bottle, which injured plaintiff's eye, it was not proper for the trial court to give it because the instruction embraces the doctrine of *res ipsa loquitur,* the basis of which has not been established by the plaintiff under the limited scope of plaintiff's declaration, and the evidence adduced in support of plaintiff's theory of the case.

Defendant's assignment of error No. 5 is to the giving of plaintiff's instruction No. 2, which *inter alia,* submits to the jury the medical and hospital expenses incurred by plaintiff, if any, and "medical and hospital expenses to be incurred by him in the future, if any". The vice inherent in this instruction is that there is no evidence in this record showing that the medical and hospital expenses incurred, or to be incurred, by the plaintiff, were reasonable and necessary. In the case of *Konopka* v. *Montgomery Ward and Company, supra,* pt. 4 of the syllabus held: "In an action for personal injuries, no recovery can be had for medical, hospital and nursing services, unless it appears from the evidence that such services were fairly necessary and that the charges therefor are reasonable."

Defendant's assignment of error No. 6 is to the effect that the trial court erred in failing to give defendant's instruction No. 3. The trial court, in our opinion, properly refused to give defendant's instruction No. 3 because that instruction informed the jury that the plaintiff had the burden of proving his case, and perhaps in addition the instruction overemphasizes, at least for jury determination, the plaintiff's duty to establish his case by a preponderance of the evidence. But whether it does or does not, the instruction is fully covered by defendant's instruction No. 2, which the trial court gave. In this jurisdiction it is not error for a trial court to refuse an instruction, where such instruction is fully covered by another instruction which the court gave. 10 M. J., Instructions, Section 49; *Browning* v. *Hoffman,* 90 W. Va. 568, 111 S. E. 492; *Drake* v. *Clay Hardware & Supply*

*Co.*, 110 W. Va. 63, 157 S. E. 35; *Robinson* v. *Hobson*, 114 W. Va. 236, 117 S. E. 745; *Kelly* v. *Rainelle Coal Co.*, 135 W. Va. 594, 64 S. E. 2d 606; and *Thrasher* v. *Amere Gas Utilities Co.*, 138 W. Va. 166, 75 S. E. 2d 376.

For the foregoing reasons the judgment of the Circuit Court of Logan County is reversed, the verdict set aside, and a new trial awarded.

> *Judgment reversed;*
> *verdict set aside;*
> *new trial awarded.*