LULA RUTHERFORD

v.

HUNTINGTON COCA-COLA BOTTLING CO.

(No. 10839)

Submitted January 22, 1957. Decided April 11, 1957.

*Jenkins & Jenkins, John E. Jenkins, John E. Jenkins, Jr.,* for plaintiff in error.

No appearance for defendant in error.

BROWNING, JUDGE:

In this action of trespass on the case, the plaintiff, Lula Rutherford, seeks to recover for lacerations, physical discomfort and mental anguish, allegedly sustained when she drank from a bottle of soft drink, bottled by the defendant, Huntington Coca-Cola Bottling Company, which bottle allegedly contained numerous small particles of glass. The case was tried to a jury, which returned a verdict in her favor in the amount of $1,500.00, and judgment was entered thereon, to which this Court granted a writ of error and supersedeas.

The plaintiff testified that: She was employed by Borden's Dairy Company; on July 29, 1954, she obtained a capped bottle of coca-cola from a vending machine, placed in a hallway of the dairy company, during a rest period; she uncapped the bottle, drank therefrom, and immediately detected foreign particles in her mouth; she removed such foreign particles with her hand and found them to be small bits of glass; her mouth was bleeding; she became ill about two hours later; and thereafter she lost approximately three months work, being under a physician's care for most of that period. She is corroborated by two witnesses, who were present at the time, as to the drinking of the coca-cola, the blood on her mouth, and the particles of glass. Another witness in her behalf, Josephine Steffy, a laboratory technician, testified that plaintiff brought the bottle and particles to her, and that she determined them to be glass. She

then notified the defendant of the incident and delivered the bottle, in which some coca-cola remained, and the glass particles to one of its officers. Neither the bottle nor the glass particles by which the plaintiff allegedly sustained injury was introduced in evidence. This witness also testified that: The vending machine was owned by the Borden Company, she was the custodian thereof, and had the key thereto; the machine contained both coca-cola and seven-up; deliveries were made by the coca-cola and seven-up drivers once weekly; the usual procedure was to purchase six cases of each soft drink, two of which were usually placed in the hallway next to the vending machine until she had an opportunity to put the bottles into the machine, and the remaining four were placed in a closet and locked up until needed; and the cases placed in the hallway were accessible to anyone who had occasion to be in the plant, the competing driver, and all employees of Borden. This witness also testified, over objection of the defendant, that she, two or three days subsequent to July 29, 1954, had obtained a bottle of coca-cola from the machine that contained particles of glass, which particles were introduced in evidence, and that thereafter, the defendant removed the remaining bottles of coca-cola from the machine. Plaintiff's witnesses also testified that the bottle from which plaintiff drank was not chipped or broken in so far as they could observe.

The plaintiff also introduced the testimony of two physicians as to plaintiff's complaints and mental state, which required six electric shock treatments, and her consequent inability to work. One, Dr. Hibbard, a psychiatrist, when asked whether plaintiff's nervousness could have been caused by drinking coca-cola with glass in it, and the shock therefrom, replied: "I think it is possible, yes." The other, Dr. Dennison, answered a similar question "I think it could have, definitely." The court subsequently instructed the jury to disregard Dr. Dennison's answer as too speculative.

At the conclusion of plaintiff's evidence, the defend-

ant moved for a directed verdict on the grounds that no specific act of negligence had been proved, and that the doctrine of res ipsa loquitur was inapplicable as the evidence showed the defendant did not have exclusive control, which motion was overruled.

The defendant's evidence as to the processing of bottles of coca-cola was as follows: Empty bottles, before re-use, are inspected for large objects and external dirt; they are then placed upside down and pass over three jets of water under pressure of 30 to 35 pounds per square inch; they then pass through three individual tanks containing varying strengths of a caustic soda solution; then pass over more jets, rinsers, of a pressure of 50 to 75 pounds per square inch; thence by a human inspector who removes any bottles in which large objects still remain or have any other discernible imperfections; thence to the "filler" and "capper"; and thence through a Radio Corporation of America, referred to in the record, and hereinafter as R.C.A., electronic inspecting device to the place where they are cased. The sensitivity of the electronic inspecting device may be adjusted so fine as to reject bottles of a slightly different shade of color. No evidence was introduced as to the actual setting of the device, but both the plant superintendent and the service representative of R.C.A., who serviced the machine and set it, testified that the machine would reject a bottle of coca-cola which contained an eyelash. The defendant then introduced the testimony of several disinterested witnesses, all prominent citizens of Huntington, who had attended a special test, conducted by the defendant prior to the trial, in which particles of glass and other foreign materials were introduced into several different bottles of coca-cola, and these bottles, along with others, were run through the electronic inspecting device. These witnesses testified that each time one of the prepared bottles went through, it was rejected by the machine.

At the conclusion of all the evidence, the defendant again moved for a directed verdict, which was overruled.

As hereinbefore mentioned, the jury returned a verdict for the plaintiff in the amount of $1,500.00. The defendant moved to set aside the verdict and grant a new trial, which motion was overruled, and judgment was entered thereon.

Errors assigned in this Court are as follows: (1) Permitting Dr. Hibbard to testify as to the possible cause of plaintiff's condition; (2) permitting the laboratory technician to testify as to her personal experience with a bottle of coca-cola different from the one purchased by plaintiff; (3) permitting the laboratory technician to testify as to defendant's action in removing the remaining bottles from the cooler sometime after July 29, 1954; (4) and (5) in giving Plaintiff's Instructions Nos. 1 & 2; (6) in overruling defendant's motion for a directed verdict at the conclusion of all the evidence; (7) in overruling defendant's motion to set aside the verdict and grant a new trial; and (8) in permitting Dr. Dennison to testify as to the relationship between drinking the coca-cola and plaintiff's subsequent illness.

The principal question presented by this record, to which one or more of the assignments of error pertains, is whether the res ipsa loquitur "maxim", "doctrine", or "rule" applies.

Counsel for the plaintiff in error urges in argument and brief that two decisions of this Court, to which reference will hereinafter be made, may be distinguished upon the facts from the instant case, and, if not, that they should be overruled. Unfortunately, the defendant in error was not represented in this Court by counsel.

The expression "res ipsa loquitur" was first used in an Anglo-Saxon appellate court by Judge Pollock in *Byrne* v. *Boadle*, 2 H. & C. 722, 159 Eng. Rep. 299, in 1863, although many centuries before Cicero used the phrase freely in the Roman Senate. In 1865 in *Scott* v. *The London and St. Katherine's Docks Co.*, 3 H. & C. 596, 159 Eng. Rep. 665, the doctrine was thus defined: "But where the thing is shewn to be under the management of

the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care." Professor Wigmore gives these requisites for the application of the doctrine: (1) the instrumentality causing the injury must be of a type as not to cause injury in the course of ordinary use unless it was carelessly constructed, inspected, or used; (2) the defendant must have control of the instrumentality at the time of the injury; and (3) the plaintiff must not have contributed to his own injury. 9 Wigmore, Evidence, § 2509.

This Court apparently first applied the rule in *Tompkins* v. *The Kanawha Board,* 21 W. Va. 224, decided in 1882, although the latin words are not mentioned in the opinion. Beginning with *Snyder* v. *Wheeling Electrical Co.,* 43 W. Va. 661, 28 S. E. 733, this Court has on many occasions come to grips with cases allegedly involving the application of res ipsa loquitur. 13 M. J., Negligence, § 55; 14 Va. & W. Va. Digest, Negligence § 121 (2) & (3). In defining the rule, this Court has not departed very much from the definition laid down in the *Scott* case. In *Wright* v. *Valan, et al.,* 130 W. Va. 466, 43 S. E. 2d. 364, this language was used: "* * * The doctrine is that when a person, who is without fault, is injured by an instrumentality at the time within the exclusive control of another person and the injury is such as in the ordinary course of events does not occur if the person who has such control uses due care, the injury is charged to the failure of such other person to exercise due care. * * *"

In the very recent case of *Cunningham* v. *The Parkersburg Coca-Cola Bottling Company,* 137 W. Va. 827, 74 S. E. 2d. 409, the third syllabus point reads: "The *res ipsa loquitur* rule has no application where the article or instrumentality, at the time of the injury, is within the exclusive control of a person other than the defendant." The writer of the opinion, however, was careful to

make these observations: "Plaintiff, however, would apply the *res ipsa loquitur* rule, upon the basis of holdings in cases such as *Parr* v. *Bottling Works,* 121 W. Va. 314, 3 S. E. 2d 499, where a harmful substance was found in a bottle of Coca-Cola; *Webb* v. *Brown & Williamson Tobacco Company,* 121 W. Va. 115, 2 S. E. 2d 898, where some foreign substance was found in a plug of chewing tobacco; *Blevins* v. *Bottling Works,* 121 W. Va. 427, 3 S. E. 2d 627; where 'rotten meat' was found in a bottle of Coca-Cola; and *Holley* v. *Baking Co.,* 128 W. Va. 531, 37 S. E. 2d 729, 167 A. L. R. 648, where a small wire was found imbedded in a cake sold in its original package. In these cases, so called 'sealed package cases', the rule was held to apply only because no opportunity existed for any negligence on the part of any person other than the manufacturer. This is not true in the instant case.* * *"

The latest case decided by this Court involving the doctrine of res ipsa loquitur is *Keffer* v. *Logan Bottling Works,* 141 W. Va. 839, 93 S. E. 2d 225, in which the plaintiff was injured by an explosion of a bottle of coca-cola shortly after purchasing it for consumption, and which may be distinguished from the cases which are to be discussed.

In four decisions of this Court, the question of the applicability of the rule of res ipsa loquitur was considered wherein foreign objects were alleged to have been found in food, bottled beverages, or a plug of chewing tobacco. Those cases must be carefully examined. The first was *Webb* v. *Brown & Williamson Tobacco Company,* 121 W. Va. 115, 2 S. E. 2d. 898. The verdict which was attacked in that case was based upon damages allegedly caused as a result of the plaintiff taking a chew of tobacco from a flat plug of that product which contained a dead worm or moth. Although the defendant introduced evidence showing the care with which its products were manufactured, this Court held that the inference of negligence, which arose from the presence of the worm or moth embedded in the plug of tobacco, was not

overcome by such evidence, and that it became a jury question as to whether defendant was negligent.

At the same term of this Court at which the *Webb* case was decided, decisions were handed down in *Parr* v. *Coca-Cola Bottling Works*, 121 W. Va. 314, 3 S. E. 2d. 499, and *Blevins* v. *Raleigh Coca-Cola Bottling Works*, 121 W. Va. 427, 3 S. E. 2d. 627. In the *Parr* case, the facts are contained in the following sentence: "* * * The ground of recovery upon which the verdict rests is the negligence of the defendant in selling to a distributor at Montgomery a bottle of Coca-Cola containing maggots, which was bought and consumed by the plaintiff in November, 1935." The question of the applicability of the rule of res ipsa loquitur was summarily dealt with by the use of this language: "Dealing with these points of error in the order that they are enumerated, we think that the first two are disposed of by this Court's holding in the case of *Nellie Webb* v. *Brown & Williamson Tobacco Company*, 121 W. Va. 115, 2 S. E. (2d) 898, 900, which was decided after the writ of error was granted in the instant case. * * *" The facts recited in the *Blevins* case are also limited, but in the opinion the Court stated that: "According to the allegations in the plaintiff's declaration and the proof offered, plaintiff and her husband were engaged in the business of selling groceries and soft drinks, including coca-cola, at retail in Raleigh County. In December, 1936, plaintiff drank from a bottle of coca-cola, purchased from an agent of the defendant, which contained a deleterious substance not specifically described in the plaintiff's testimony, but spoken of as 'some kind of old rotten meat', the quantity of which was sufficient to stop up the neck of the bottle.* * *" Again there was evidence by the defendant of its efficient bottling system by which it attempted to establish the impossibility of such a substance getting into a bottle containing its beverage, but the Court said: "In so far as the proof of negligence is concerned, it is now the established rule in this state affecting the preparation and distribution of foodstuffs that the rule of *res ipsa loquitur* applies between the

packer and the ultimate consumer, and that it rests with the jury to determine whether the packer-defendant's proof of a method and system showing the exercise of extraordinary care, but not relating to the specific article consumption of which it is contended injured the plaintiff, is insufficient to overcome the *prima facie* presumption of negligence. * * *" The first syllabus point of the *Blevins* case approved the first syllabus point of the *Parr* case.

In *Holley* v. *Purity Baking Company*, 128 W. Va. 531, 37 S. E. 2d. 729, recovery was sought by the plaintiff upon allegations and proof that he had received an injury as a result of getting a small wire into his throat while eating a piece of cake, admittedly baked, wrapped and placed in the retail grocery store by defendant where it was purchased by the plaintiff. The cake was covered by the defendant baking company with a celophane wrapper which the evidence showed remained intact until placed in the possession of the consumer. The evidence also showed that the wire was embedded within the piece of cake which the plaintiff ate. The jury verdict for the plaintiff was set aside and the judgment upon it reversed upon the giving of an instruction by the trial court to the effect that if the jury believed, from a preponderance of the evidence that certain prerequisite facts were true, and that the defendant was injured thereby, "there is a 'prima facie presumption *of law*' that said defendant was 'guilty of negligence'. * * *." It was in that case that this Court reappraised some earlier cases, including *Parr* and *Blevins*, wherein it had been held that where res ipsa loquitur was applicable, a prima facie presumption of negligence arose, and established the rule which has since been consistently adhered to that where the evidence establishes the necessary elements of res ipsa loquitur that the jury may *infer* that plaintiff's injury did or did not result from the defendant's negligence, and that in no such case does it give rise to a *presumption* of negligence.

It is apparent from the decisions in the *Webb, Parr,*

*Blevins* and *Holley* cases that the instrumentalities which caused injuries to the plaintiffs were not in the exclusive possession of the defendants at the time of the injury. Some courts have held that the rule is applicable in so-called "sealed package" cases where the instrumentality is under the exclusive control of the defendant at the time of the negligence causing injury, while others have based their decisions upon "extended control" or "constructive control", where the facts warrant its application. In the instant case, the witness Steffy, an employee of the Borden Company, had the same status as the storekeepers in the *Parr* and *Blevins* cases. While it is true that the facts in the latter two cases, as contained in the opinions, are meager, they are sufficient to show that the defendant bottling company delivered its bottles of soft drink to a third person, who subsequently sold them to customers who, in turn, drank from the bottles and sustained the injuries complained of. The only fact in the instant case that could distinguish it from the *Parr* and *Blevins* cases is the evidence of the witness Steffy that a portion of the bottles of coca-cola which were delivered to her may have set for a short time near the vending machine before they were placed in it. There is no evidence that the bottle which allegedly caused plaintiff's injury was one of the bottles which were thus left beside the vending machine; that any person other than the witness Steffy was at or near the place where the bottles sat; that any one tampered with the bottles; or had a motive for such conduct. There is no evidence in this case from which the jury could conclude that it was more likely that some evilly disposed person took the cap off of the bottle of coca-cola, from which the plaintiff later drank, inserted some small particles of glass therein, and carefully replaced the cap while the bottle sat near the vending machine, than that such procedure could have been effected after the bottles passed the final inspection at the defendant's plant, and before they were delivered to the Borden Company. Of course, it is possible that the plaintiff herself inserted the glass into the bottle after she uncapped

it for the purpose of attempting to recover damages from the defendant. However, in reviewing hundreds of cases where the doctrine of res ipsa loquitur has been applied in sealed package and bottle beverage cases, none has been found where it was not held that it was a question for the jury as to whether the plaintiff was the culprit. All that has been said does not mean that the integrity of a bottled beverage may not, in a proper case, be important, or decisive. However, upon the facts in this case, this Court has decided that it cannot be distinguished from the *Parr* and *Blevins* cases, and that the rule laid down therein should be followed. A comprehensive review of the cases in other jurisdictions upon this question indicates that the views herein expressed represent the great weight of authority, although there are cases to the contrary. No attempt will be made to refer to specific cases, but believing that it might be helpful, the following general citations are pertinent: 14 Va. and W. Va. Dig., Negl. § 121 (2,3); 9 Va. and W. Va. Dig., Food § 25; 13 M.J., Negl. § 25; 38 Am. Jur., Negl. § 295; 22 Am. Jur., Food § 117; 4 A. L. R. 1560; 17 A. L. R. 672; 39 A.L.R. 992; 47 A. L. R. 153; 63 A. L. R. 340; 88 A. L. R. 527; 105 A. L. R. 1502; 111 A. L. R. 1239; 140 A. L. R. 191; 142 A. L. R. 1490; 20 Minn. L. Rev. 241; 25 Va. L. Rev. 246; 40 Va. L. Rev. 951.

However, it was reversible error to give Plaintiff's Instruction No. 1 concluding with this language: "* * * that the fact of the presence of glass in the bottle is sufficient to permit you to draw the inference that the defendant was guilty of negligence, and you should find for the plaintiff unless you further believe that the defendant has overcome by competent evidence such inference of negligence." The establishment by plaintiff's proof of the elements necessary to make applicable the rule of res ipsa loquitur never shifts the burden of proof to the defendant. Establishing an inference of negligence by the evidentiary rule of res ipsa loquitur may be sufficient for the jury to find a verdict for the plaintiff,

but it is never required to do so, and a directed verdict for the defendant is not warranted, even though the latter, at the peril of an adverse verdict, offers no testimony. *Diotiollavi* v. *United Pocahontas Coal Co.*, 95 W. Va. 692, 122 S. E. 161; *Monteleone* v. *Cooperative Transit Co.*, 128 W. Va. 340, 36 S. E. 2d. 475; *Holley* v. *Purity Baking Co.*, 128 W. Va. 531, 37 S. E. 2d. 729; *Parcell* v. *U. S.*, 104 F. Supp. 110.

It was not error to permit Dr. Hibbard to testify as to the "possible" causal relationship between plaintiff's condition at the time he treated her and the alleged drinking of a coca-cola with particles of glass in it, but that evidence, standing alone, was not sufficient to establish such relationship. As to the admissibility of such medical testimony, see *McMechen, et al.* v. *McMechen, et al.*, 17 W. Va. 683; *Bowen* v. *City of Huntington*, 35 W. Va. 682, 14 S. E. 217; *Hayslett* v. *Westvaco, etc.*, 125 W. Va. 611, 25 S. E. 2d. 759; 136 A. L. R. 965; 135 A .L. R. 516. The testimony in chief of the witness Steffy regarding her experience in drinking from another bottle of coca-cola which she said contained glass, subsequent to the similar experience of the plaintiff, was erroneous. *Hendricks* v. *Monongahela West Penn, etc.*, 111 W. Va. 576, 163 S. E. 411; *Knight* v. *Moore*, 179 Va. 139, 18 S. E. 2d. 266; 100 A. L. R. 1378; 7 M.J., Evidence, § 45. It was also error to permit that witness to testify that, subsequent to the alleged injury to the plaintiff, the defendant removed the remaining bottles of coca-cola from the vending machine. *Whitten* v. *McClelland*, 137 Va. 726, 120 S. E. 146; *Columbia and Puget Sound Railroad Company* v. *Hawthorne*, 144 U. S. 202, 12 S. Ct. 591; 2 Wigmore on Evid., 3d Ed., § 283.

The assignment of error as to the testimony of Dr. Dennison is without merit. It is true that this witness answered in the affirmative to a question phrased in this language: "Could her illness have been caused from the glass?" However, the court sustained an objection to the question and answer, and instructed the jury to disregard both. There was no cross-assignment of error.

Neither do we perceive any error in the giving of Plaintiff's Instruction No. 2.

The judgment of the Circuit Court of Cabell County is reversed, the verdict of the jury is set aside, and a new trial is awarded.

*Reversed; verdict set aside;*
*new trial awarded.*

GIVEN, JUDGE, dissenting:

In my opinion the facts in this case bring it within the principles followed in the recent case of *Keffer* v. *Logan Coca-Cola Bottling Works, Inc.,* 141 W. Va. 839, 93 S. E. 2d 225. In that case, we held that the *res ipsa loquitur* rule was not applicable, for the reason that "the bottle causing the injury may have been mishandled by some one other than an employee of the bottling company". Notice that the basis of the holding was that the bottle "may have been", not that it actually was, "mishandled by someone other than an employee of the bottling company". In that case, the defendant delivered cases of Coca-Cola to the retail dealer. The driver delivering the Coca-Cola placed the cases in a wareroom, where they remained until the bottles therefrom were placed in a cooler or sold to a customer. Persons other than employees of defendant were permitted in the wareroom.

The facts controlling in the instant case are plain. Defendant bottling company sold and delivered cases of bottled Coca-Cola to the Borden Company, usually about six cases each week. One of the hundred or more employees of the Borden Company, Josephine Steffy, received the cases for the Borden Company. Usually, two cases were left near a vending machine, owned by the Borden Company, until the bottles therefrom were placed in the machine, which machine automatically dispensed a bottle of Coca-Cola upon the insertion in the machine of a proper coin. Miss Steffy, the employee of the Borden Company, testifying for plaintiff, stated, in effect, that

she was the only person who placed bottles in the machine; that usually, upon each delivery by defendant, two cases of Coca-Cola were left beside the machine, and the other cases were placed in a "cupboard" back of the "storeroom", until needed, when they were, by her direction, carried by the janitor back to a place near the machine, where they remained until the bottles therefrom were placed in the machine by Miss Steffy; that the machine is operated in a "general hallway for the use of all employees at Borden's and anybody else that happens to be in the plant", including drivers other than those of defendant or of the Borden Company; and that the machine is not watched at all times. It is not shown how long the cases placed in the hall remained there before the bottles of Coca-Cola were placed in the machine. Thus, it will be seen that, precisely as in the *Keffer* case, actual possession as well as absolute control of the bottles of Coca-Cola had passed from defendant to the Borden Company. Moreover, it is definitely shown that possession and absolute control of the very bottle in question had passed to the plaintiff who, after receiving it from the machine, opened it in such manner and at such time as she elected.

I need cite no authority that the rule of *res ipsa loquitur* is usually applied only where the thing causing the injury is under the exclusive control of the defendant. The majority say that in the instant case they are bound by the holdings in *Parr* v. *Bottling Works* and *Blevins* v. *Bottling Works*. Those cases were decided as being controlled by *Webb* v. *Brown & Williamson Tobacco Co.*, 121 W. Va, 115, 2 S. E. 2d 898. Those cases are similar to the instant case. There is, however, a marked material distinction. The foreign substance causing the injury in the *Webb* case was so imbedded in the product sold as to make it impossible for it to have been placed therein except in the process of manufacture. Such is not true in the instant case. Any one of the hundred or more persons using the hall wherein the cases of Coca-Cola were left, between the time of delivery of the

cases by defendant and the placing of the bottles in the vending machine, could have removed certain bottles from the cases and replaced others therein, could have uncapped a bottle and placed glass therein and recapped the bottle; or, in so far as the record reveals, such acts could have been done by the plaintiff in this case. It is not important that no proof of such acts was tendered. The opportunity to have done so is admitted. The "opportunity" is the test as to whether exclusive control by the defendant was broken.

Perhaps the extension of the rule to a field covering cases like the *Webb* case and the *Holley* v. *Purity Baking Company* case, 128 W. Va. 531, 37 S. E. 2d 729, 167 A.L.R. 648, can be justified on the theory of continued or extended control by the manufacturer, though that seems unnecessary, since the proof in such cases constitutes strong proof of actual negligence on the part of defendant. However that may be, I do not believe the rule should now be extended to cover a case where exclusive control has clearly and definitely passed from the defendant and where there is not the least doubt that persons not responsible to defendant had "opportunity" to have committed the act which resulted in the injury.

Being of the view indicated, I respectfully dissent.