KYLE MABE

*v.*

HUNTINGTON COCA-COLA BOTTLING COMPANY, *a corporation*

(No. 12015)

Submitted September 27, 1960. Decided November 15, 1960.

*Jenkins & Jenkins, John E. Jenkins, John E. Jenkins, Jr., C. Robert Schaub,* for plaintiff in error.

*W. H. Darnall,* for defendant in error.

BERRY, JUDGE:

This action of trespass on the case was instituted in the Circuit Court of Cabell County, West Virginia, by the plaintiff, Kyle Mabe, against the defendant, Huntington Coca-Cola Bottling Company, a Corporation, to recover damages for injuries allegedly received by the plaintiff when the lid of a premix Coca-Cola tank blew off while the tank was under pressure. The jury returned a verdict in favor of the plaintiff in the amount of $2500.00. A motion on behalf of the defendant to set aside the verdict was overruled by the trial court and judgment entered on the verdict. A writ of error and supersedeas to this judgment was granted by this Court on February 8, 1960.

The plaintiff is the owner of a drive-in restaurant in Huntington, West Virginia. On February 28, 1957, he purchased from the defendant a premix Coca-Cola dispensing system which is composed of one or more 5 gallon stainless steel drums called premix tanks, a

cylinder of carbon dioxide gas to furnish pressure, and a cooling coil and spigot. Coca-Cola is placed in the premix tanks at the bottling plant under pressure of 60 pounds per square inch. On the top of each premix tank there is a lid in the neck thereof which rests against a rubber gasket known as an "O ring" and over the lid and gasket a retaining ring is placed to act as a collar. There are also two small valve openings on the top of the tank for the attachment of hoses to the tank. Each of the valve openings has an automatic sealing device which operates when a hose is disconnected. The system is set up by attaching a cylinder of carbon dioxide gas by means of a hose to one of the valve openings in the top of a premix tank. A hose is connected from the other valve opening to another premix tank or to the dispensing spigot if only one premix tank is used, the tanks being connected in series if more than one is used, so that the pressure from the gas cylinder forces the Coca-Cola from the tank through the hoses to the tank farthest away from the pressure cylinder. The last tank is then connected to a cooling coil and spigot through which the Coca-Cola beverage passes and is cooled and dispensed.

When the retaining ring of the premix tank is closed a post welded to the ring is adjacent to a post attached to the rim of the tank in such a manner that a wire is run through holes in the two posts and a lead seal attached. The purpose of this wire and lead seal is to assure the bottling company that the lid from the tank has not been removed by the retailer and another product added to or substituted in the tank. This sealing device serves the same function as a seal on a railroad boxcar, and has nothing to do with the effectiveness of the closure of the tank.

The plaintiff testified that on March 17, 1957, he disconnected an empty premix tank from the premix system at his restaurant, walked thirty-seven feet carrying the tank, set it down on the floor and that at that time the top of the tank blew off, striking him in the face and injuring him. After the accident the plaintiff

was removed to the St. Mary's Hospital in Huntington where it was found that he was suffering from lacerations of the face, a severe laceration of the lip, compound fracture of the nose and foreign bodies in and around the left eye, which were removed from the eye. It was necessary that the plaintiff remain in the hospital for several days, although he suffered from the injuries for about three weeks.

At the time this premix system was purchased from the defendant it was installed in plaintiff's restaurant in the presence of the plaintiff, and all of the equipment remained in his possession and under his control during the time it remained in his restaurant. The plaintiff was the only witness to the actual accident. He says that he removed one of the exhausted tanks, carried it through the kitchen to the wareroom and when he set it down the lid blew off, striking him in the face. Two waitresses and a boy who did odd jobs for the plaintiff were present in the restaurant when the accident occurred, but did not witness the actual happening of the accident. They testified that they found the plaintiff lying on the floor, bleeding profusely, and the boy took him to the hospital in his automobile for emergency treatment.

The plaintiff and his witnesses deny that the plaintiff did anything but remove the tank, carry it back and set it down. However, the defendant introduced witnesses to contradict or impeach plaintiff's witnesses to the effect that one of the plaintiff's witnesses had told them the plaintiff was hammering on the top of the can, in an effort to get the top off, when it blew up. Plaintiff's witness stated that the tank had no wire seal on it and other than that, there was no testimony by plaintiff's witnesses that there was anything wrong with the tank prior to the accident.

The defendant's evidence with regard to the tank was that the top of the tank was properly locked and sealed at the time it was delivered and that the only way these tops would blow off was when an attempt was made to force it off.

The evidence of the engineers who testified on behalf of the defendant is undisputed that if the lid and gasket were placed in the neck ring on top of the tank, the retaining ring then put on and rotated until it was in a locked position, the wire seal installed, and the pressure of 60 pounds per square inch of gas placed in the tank in the process of filling the tanks, this would cause the lid to move up and expand the rubber gasket so that it remained sealed even if the sealing wire and retaining ring were removed. With regard to the possibility of the lid coming off accidentally, the engineer testified that it required 8.5 foot pounds of torque to break the wire while rotating the ring and 70 pounds to rotate the ring in the level portion of the slot or groove on the tank neck ring and 24.5 pounds to rotate it in the sloping portion of the neck ring. He testified that experiments indicated that if the tank was dropped on a concrete floor while bearing pressure of 5 to 100 pounds with the ring in all positions, the lid would not come off except when there was no pressure at all in the tank. He further testified that a man could only exert 9.3 foot pounds of torque with his hands in turning the ring, and although it might be possible for a man to break the sealing wire, he could not rotate the ring off if there was 60 pounds of pressure in the tank, and that it would take 7.5 foot pounds of energy to rotate the ring with 10 pounds of pressure in the tank. Therefore, the engineer stated that a man would have to use tools to get the ring off under full pressure.

The tank in question was introduced as an exhibit during the trial of the case. It had marks on the top showing that some violent application of force had been made on the top. The defendant's expert witnesses testified that these marks could not have been made on the top when it was filled because tools were used of equal carbon steel composition to the tank which left no marks thereon and that the visible marks on the can were caused from the application of some tool having a higher carbon content than the low carbon content of stainless steel from which the tank in question was made.

Counsel for the plaintiff testified as a witness for his client and stated that he had hammered on the top of the tank, which was introduced as an exhibit, with a hammer. Other witnesses for the plaintiff testified with regard to the same matter during the trial.

It should be noted that the attorney for the plaintiff testified as a witness on behalf of his client on a matter that was not merely a formal matter, without withdrawing from the case, and although there was no objection or comment at the time, inasmuch as this involves an ethical question which has been noted in some other cases in this Court, we think it should be pointed out that for a lawyer to so testify, unless it is essential to the ends of justice, is not approved by the Canons of Professional Ethics. See Canon 19 of the Code of Professional Ethics, 128 W. Va. xxvii.

During the trial of the case the plaintiff introduced evidence to show that after the accident the defendant started furnishing the plaintiff with cans on the top of which was placed the following words: ''Relieve pressure before removing this ring—caution''. The defendant objected to the introduction of this evidence, the objection was overruled by the trial court, and the evidence was allowed to be considered by the jury.

During the argument to the jury the plaintiff's attorney referred to the doctrine of *res ipsa loquitur* and gave an example thereof. Counsel for the defendant moved the court to instruct the jury to disregard the remarks of plaintiff's attorney with respect to the doctrine of *res ipsa loquitur* relative to the fact that the accident itself created an inference of negligence, because this argument was contrary to the instructions given by the court with regard to this matter. This motion was overruled by the trial court.

The errors relied on by the defendant for reversal are: (1) Permitting evidence to be introduced of words on the top of tanks containing a warning on tanks furnished to the plaintiff after the accident occurred, (2) the refusal of the trial court, upon motion of the de-

fendant, to instruct the jury to disregard remarks of plaintiff's counsel dealing with the doctrine of *res ipsa loquitur,* and, (3) the refusal of the trial court to direct a verdict in favor of the defendant because no primary negligence had been proved.

The evidence introduced by the plaintiff showing a caution sign on tanks furnished to the plaintiff after the accident was not proper evidence in a case of this kind and should not have been admitted, because any precaution taken subsequent to the accident would have no bearing on the case. Such evidence is incompetent, because any precaution for the future is not to be construed as an admission of responsibility in the past. *Columbia Railroad Co. v. Hawthorne,* 144 U. S. 202, 12 S.Ct. 591.

The general rule concerning this matter is that evidence of precautions taken after an accident is not admissible to prove antecedent negligence. *Lay v. Elk Ridge Coal & Coke Company,* 64 W. Va. 288, 61 S. E. 156; *Whitten v. McClelland,* 137 Va. 726, 120 S. E. 146; *Rutherford v. Huntington Coca-Cola Bottling Co.,* 142 W. Va. 681, 97 S. E. 2d 803.

It is clear that the doctrine of *res ipsa loquitur* is not applicable to the instant case. The defendant did not have possession or control of the container at the time of the accident. It was in the possession and control of the plaintiff. In fact, it had been under his control for quite some time and it was while he was in the act of moving it that the accident occurred. The doctrine of *res ipsa loquitur* should not be applied where the evidence shows that such a container as the one involved in the instant case has left the exclusive control of the defendant and is in the possession and control of someone else where others may have had the opportunity to mishandle such container. *Keffer v. Logan Coca-Cola Bottling Co.,* 141 W. Va. 839, 93 S. E. 2d 225; *Mullins v. Baker,* 144 W. Va. 92, 107 S. E. 2d 57.

There was no attempt to use the doctrine of *res ipsa loquitur* in the trial of this case until the attorney for the plaintiff used it in his argument to the jury. The attorneys for the parties in the trial court recognized that it was not applicable and the jury was so instructed by the trial court in Instruction Number 4, offered by the defendant, to which no objection was offered by counsel for the plaintiff. This Instruction told the jury that negligence on the part of the defendant could not be inferred from the mere happening of the accident. When the attorney for the plaintiff attempted to refer to the doctrine of *res ipsa loquitur* in his argument to the jury he was arguing against the instruction of the trial court. This is improper and the motion of the attorney for the defendant for the court to instruct the jury not to consider the argument should have been sustained and the jury so instructed. 2 M.J., Argument and Conduct of Counsel, §8, §22; *State v. Dickey,* 48 W. Va. 325, 37 S. E. 695; *Ray v. Ches. & Ohio Railway Co.,* 57 W. Va. 333, 50 S. E. 413. See Rule VI (e), Rules of Practice and Procedure for Trial Courts, 116 W. Va. lxiii.

We now come to the major or controlling assignment of error in this case; that is, that the plaintiff did not prove any negligence on the part of the defendant. This must be done before any recovery can be had. This matter is discussed in 13 M.J., Negligence, §52, wherein it is stated: "The general doctrine is that the burden is upon the plaintiff to show the negligence of the defendant as a basis of recovery, while upon the defendant, when properly pleaded, rests the burden of showing the contributory negligence of the plaintiff. Also the evidence must show more than a mere probability of negligence. It is not sufficient that the evidence is consistent equally with the existence or non-existence of negligence. Negligence and contributory negligence are never presumed but must always be proven, unless the occurrence is of such nature that the doctrine of *res ipsa loquitur* can be applied. This rule is not changed by the standard of care which a carrier

must observe. In the absence of evidence on a question of negligence, the presumption is generally that the actor is free from negligence, but where there is positive evidence, this presumption disappears.''

It has been stated that the doctrine of *res ipsa loquitur* is not applicable in this case and therefore, there can be no inference of negligence attributed to the defendant. *Rutherford v. Huntington Coca-Cola Bottling Co.*, 142 W. Va. 681, 97 S. E. 2d 803. To make it abundantly clear in the instant case, it has been consistently held that the doctrine of *res ipsa loquitur* ''* * * has no application where an accident is due to a defective appliance under the management of the plaintiff; nor to a case involving divided responsibility, where an unexplained accident may have been attributable to one of several causes for some of which the defendant is not responsible.'' 13 M.J., Negligence, §55; *Mullins v. Baker,* 144 W. Va. 92, 107 S. E. 2d 57. ''The mere happening of an accident is, of itself, no evidence of negligence.'' 13 M.J., Negligence, §58.

It was held in point 4, syllabus, *Fleming v. Hartrick,* 100 W. Va. 714, 131 S. E. 558, that ''Negligence is never presumed: it must, when relied on as the basis of an action for damages, be established by a preponderance of the evidence, and unless so established the plaintiff is not entitled to recover, and the court should so instruct the jury.'' This same principle was applied and quoted as point 2, syllabus, *Fleming v. McMillan,* 125 W. Va. 356, 26 S. E. 2d 8.

In the case at bar the plaintiff, to whom the defendant sold the container in question, was the owner of the retail establishment in which the container was used. The evidence is uncontradicted that after it had been sold and placed in his establishment, he had the custody and control of such container while it remained in his establishment. In the other cases before this Court involving containers such as bottles which have exploded, the plaintiff was a third party who purchased the bottle or container from the retailer. However, the

same principle would apply in both cases, as is indicated in syllabus 2 of the case of *Keffer v. Logan Coca-Cola Bottling Co.*, 141 W. Va. 839, 93 S. E. 2d 225, in which the following language appears: "In an action at law to recover damages for personal injuries a verdict for the plaintiff will be set aside where the evidence is such that a jury could not properly infer that the defendant was negligent in the manner alleged in the declaration." In other words, in this case, as in the *Keffer* case, if the doctrine of *res ipsa loquitur* does not apply, which has been agreed or held that it does not in either case, there can be no inference of negligence on the part of the defendant and there can be no recovery unless such negligence is proved. *Redman v. Community Hotel Corp.*, 138 W. Va. 456, 76 S. E. 2d 759. No primary negligence on the part of the defendant was proved in this case. The uncontradicted evidence is that the defendant delivered the container in question properly locked and sealed, that after remaining in the possession and control of the plaintiff and being used by him for a considerable period of time, the unexplained accident occurred. The defendant's evidence indicated that even if the seal had been broken, the lid could not have blown off and the only way the top could be removed was by using tools.

We are of the opinion, from the facts in the case at bar, that inasmuch as no primary negligence has been proved and the doctrine of *res ipsa loquitur* is not applicable, there can be no recovery against the defendant. The trial court should have so instructed the jury.

For the reasons stated herein, the judgment of the Circuit Court of Cabell County is reversed, the verdict of the jury is set aside, and a new trial is awarded the defendant.

*Reversed; verdict set aside; new trial awarded.*